465 So.2d 11 (1984)
John ROYER, Plaintiff-Appellee,
v.
CLIFFS DRILLING COMPANY, INC., Defendant-Appellant.
No. 84-205.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1984.
Writ Denied February 8, 1985.
*12 Allen, Gooch & Bourgeois, Raymond C. Jackson, Lafayette, for defendant-appellant.
J. Minos Simon and Gregory K. Klein, Lafayette, for plaintiff-appellee.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Bert Wilson, Roy & Hattan, L. Lane Roy, Lafayette, for defendant-appellee.
Before FORET, DOUCET and KNOLL, JJ.
FORET, Judge.
This appeal is from a judgment in a tort suit and a judgment in a worker's compensation suit, both instituted by the plaintiff, John Royer, in which the appellant, Cliffs Drilling Company, Inc., is a party. The cases have been consolidated on appeal to consider the issues presented by Cliffs, as intervenor in the tort suit and as defendant in the worker's compensation suit. A separate opinion is being rendered this date in Royer v. Liberty Mutual Insurance Company, 465 So.2d 16 (La.App. 3 Cir.1984).
The plaintiff appeals only the denial of penalties and attorney's fees in the worker's compensation suit. No other parties have appealed.
The issues presented by Cliffs in this appeal are:
(1) Did the trial court err in denying reimbursement to Cliffs for the total wages it paid in lieu of compensation to the plaintiff from May 27, 1981 until November 2, 1981;
(2) Did the trial court err in finding that Cliffs was not entitled to reimbursement for medical expenses and benefits paid to plaintiff as a result of a subsequent work-related accident in September of 1982?
(3) Did the trial court err in its finding that John Royer was temporarily totally disabled from September 16, 1982, for an indefinite period thereafter?
We affirm the judgment of the trial court denying reimbursement to Cliffs in the amount of $11,550.00, representing the total wages paid in lieu of compensation provided by statute, but reverse the findings of the trial court with respect to Cliffs' entitlement to reimbursement for compensation and medical expenses paid subsequent to September 16, 1982, and amend the finding that the plaintiff is temporarily totally disabled. We also amend the judgment of the trial court to provide for a credit for any further compensation or medical expenses which Cliffs may be obligated to pay.

*13 FACTS
The plaintiff, John Royer, while in the course and scope of his employment as a hot-shot driver[1] for Cliffs, was involved in an automobile accident. The plaintiff sustained injuries to his left knee, left ankle, his head, chest, ear, and the soft tissue structures of his back. The plaintiff was unable to return to work for the next five months, during which time Cliffs continued to pay his full salary as well as his medical expenses. Plaintiff filed suit against the driver of the other automobile, Robert Moss; his insurer, Allstate Insurance Company; his employer, Superior Lift Boat and Rig Manufacturer, Inc.; and its insurer, Liberty Mutual Insurance Company. Cliffs intervened in the suit seeking to recover any amounts paid as wages and for medical expenses. The plaintiff returned to work as a hot-shot driver on November 2, 1981, but before the tort suit was tried, the plaintiff was "reinjured" while working in Cliffs' yard on September 16, 1982. Cliffs paid the plaintiff compensation benefits and paid his medical expenses resulting from the second accident. The tort suit was tried before a jury and the issues involving the intervenor were decided by the court. On April 8, 1983, the jury returned a verdict in favor of the plaintiff in the amount of $113,000.00. The trial court found that Cliffs was entitled to receive the compensation which would have been owed to the plaintiff from May 27, 1981, until November 2, 1981 ($3,679.16), medical expenses for that period totalling $5,489.59, compensation benefits paid from September 16, 1982, until April 6, 1983 ($5,916.00), and medical expenses for that period totalling $949.93. (The other issues decided by the court are of no consequence in this appeal.) One month later, the court, on its own motion, ordered a new trial for reargument only on the claims of the intervenor. It subsequently rendered judgment reversing its previous ruling, denying Cliffs any reimbursement for expenses incurred in relation to the September 16, 1982 accident.
On April 13, 1983, Cliffs terminated compensation benefits to the plaintiff, and the second suit presented here on appeal was filed. The trial court found that the plaintiff was temporarily totally disabled and entitled to compensation from September 16, 1982, for the period of such disability. The court also found that the defendant was not arbitrary and capricious in its termination of benefits and subsequent refusal to pay, thereby denying the plaintiff's claim for penalties and attorney's fees.

CLAIMS OF THE INTERVENOR
The first issue presented by Cliffs is that it is entitled to reimbursement for the full wages that it paid to the plaintiff for the five months that he was unable to work. We are in agreement with the trial court that Cliffs is entitled only to the amount of compensation which it was obligated to pay under LSA-R.S. 23:1221 and may recover only the amount as allowed by LSA-R.S. 23:1101. Compensation, in our opinion, contemplates something less than full wages and this is amply demonstrated throughout the Worker's Compensation Act. We think the Act was designed to minimize a disabled worker's wage loss, not insure him for a total loss. It is therefore our understanding that LSA-R.S. 23:1101 provides only recovery for compensation to which the employee was legally entitled under the Act. See Jasper v. Garcia, 280 So.2d 389 (La.App. 4 Cir.1973), and Chase v. Dunbar, 185 So.2d 563 (La.App. 1 Cir.1966). This contention of Cliffs is without merit.
The second issue concerns Cliffs' claims to reimbursement for the compensation and medical expenses it paid on behalf of the plaintiff after September 16, 1982. Cliffs maintains that the second incident with the "cheater pipe"[2] did nothing more *14 than aggravate a preexisting condition. The trial court found that the incident was a second and separate accident and denied reimbursement on that basis. We are not in disagreement with the trial court as to the second and separate nature of the incident, but we think that, based upon the evidence before us, the incident was one in which the resulting damages were so directly traceable to the May 27, 1981 accident that to deny reimbursement would allow a double recovery to the plaintiff.
Dr. John Cobb treated the plaintiff for the injuries to his knee and back following the automobile accident in May of 1981. It was his opinion that the plaintiff was suffering from a degenerative facet disease of his back, which is an arthritic process. According to Dr. Cobb, any type of twisting motion would cause it to be aggravated. The plaintiff had no history of back trouble prior to the accident and began complaining of lower back pain sometime after the accident while being treated by Dr. Cobb. The plaintiff underwent physical therapy for the treatment of his injured knee and back and seemed to be improving in his condition and complaints of pain. Dr. Cobb advised the plaintiff that he could return to work, but that he should not do a lot of squatting or climbing and to be careful about lifting and particularly twisting. Dr. Cobb agreed that the plaintiff was disabled in the sense that he had to be cautious about how he used his leg and back. Dr. Cobb said that the plaintiff's condition had persisted since the time of the automobile collision and that his knee and back conditions were permanent. In explaining why he had classified the incident of September 16, 1982, as a new accident, Dr. Cobb said that the basic underlying problem of plaintiff's back had not changed, he had the same similar low back pain which was very compatible with the type of symptoms he had when he previously complained of back pain, but that this was a new accident because it was related to a new trauma. When asked if the disabilities and the permanent residual conditions were traceable directly to the automobile collision, he said that the knee certainly was and that the facet degeneration was aggravated by the accident.
The plaintiff testified that, after the accident, he had back pain all of the time, that even after he returned to hot-shot driving in November of 1982, the pain in his back and leg never left him. He dealt with the pain caused by the driving by taking aspirin and soaking in hot baths. The plaintiff said that the incident with the cheater pipe aggravated his back more, that it had been hurting in the middle, but then it hurt him more on the side. Dr. Cobb, in his testimony, said that that particular mechanism of injury would be capable of aggravating the facet degeneration and that it was the type of thing he cautioned the plaintiff about.
Our review of Dr. Cobb's testimony and the plaintiff's testimony leads us to the conclusion that the trial court was clearly wrong in its determination that the second accident was not simply the aggravation of a continuing disability suffered by the plaintiff as a result of the May 27, 1981 automobile accident. Dr. Cobb stated that his diagnosis as to the nature of the plaintiff's back problem had not really changed subsequent to the second accident. Even though the plaintiff did reach some maximum level of recovery and was discharged to return to work, he was clearly disabled from performing manual labor. The plaintiff testified that his problems and pain were of a continuing nature, and this is supported by the medical testimony.
We are of the opinion that the crucial issue in determining who bears the ultimate responsibility for the plaintiff's disability is whether this same disability was present before the September accident or whether the accident aggravated the plaintiff's back condition causing his disability. Abshire v. Dravo Corp., 396 So.2d 521 (La.App. 3 Cir.1981). We think that the disability resulted from the automobile accident and that nothing about the plaintiff's condition changed subsequent to the September accident except that he was again unable to work due to a flare-up of his symptoms. The plaintiff was again discharged by Dr. Cobb to return to hot-shot *15 driving in March of 1983. According to Dr. Cobb, his condition then seemed about the same as in February of 1982, when he discharged him.
The Court in Abshire said:
"The proper standard for determining whether an accident is the legal cause of the disability is simply whether the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment. Allen v. Milk Haulers, Inc., 278 So.2d 871 (La.App. 1 Cir.1973)."
The plaintiff proved in his tort suit that the automobile accident had indeed changed him from one capable and accustomed to performing a job involving manual labor to one no longer capable of performing all of the duties incidental to his job of hot-shot driving. The same cannot be said about a change in the plaintiff's condition subsequent to the September accident. Nor do we find that the second accident caused a greater disability than that which existed, as evidenced by the fact that Dr. Cobb again discharged the plaintiff to return to work subject to the same limitations.
While we find also that the second accident would be a compensable one, we cannot deny the intervenor reimbursement for compensation and medical expenses incurred as the result of a disability caused by the negligence of the defendant, Robert Moss, and his employer, and for which the plaintiff recovered an award of $113,000.00. To allow the defendant to attribute his continuing disability to some other cause would be to create a situation of double recovery for the plaintiff for one disability.
We therefore find that Cliffs is entitled to reimbursement in the sum of $5,916.00 paid as compensation and $949.93 in medical expenses as a result of the September 16, 1982 accident. Cliffs is additionally entitled to a credit against all future weekly worker's compensation obligations accruing to the plaintiff from Cliffs against that portion of the judgment remaining after Cliffs has received reimbursement for sums actually paid, up to the extent of the plaintiff's remaining judgment. LSA-R.S. 23:1101 et seq.; Johnson v. Harry Jarred, Inc., 391 So.2d 898 (La.App. 2 Cir.1980).

EXTENT OF DISABILITY
"The employee in a worker's compensation proceeding has the burden of establishing the disability and causal relation with the employment accident by a preponderance of the evidence." Allor v. Belden Corp., 393 So.2d 1233 (La.1981). The plaintiff, as well as other witnesses, testified that he could no longer load and unload his truck, and that assistance was made available to him for that purpose. The medical evidence is clear that the plaintiff suffered a substantial disability, the symptoms of which would remain with him for the rest of his life. The plaintiff had none of these problems prior to the automobile accident, and he had been performing the loading and unloading incidental to his job with no difficulty. Dr. Cobb twice discharged the plaintiff to return to hot-shot driving, cautioning him about certain activities which were likely to aggravate his injuries, such as lifting, climbing, and squatting.
If handling heavy loads is a substantial part of an employee's duties, then it is irrelevant, for workmen's compensation purposes, whether assistance in doing so is available; the law looks only to the occupational capacity of the injured employee, and a claimant is considered "disabled" if he can perform his normal duties only with the assistance of others. Byrer v. Southern Baptist Hosp., Inc., 350 So.2d 1233 (La.App. 4 Cir.1977).
We find that the plaintiff is now permanently partially disabled within the meaning of LSA-R.S. 23:1221(3), as amended by Acts 1975, No. 583 § 9; that the preponderance of the evidence shows that the plaintiff can no longer perform the "duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, *16 and experience". Therefore, the judgment of the trial court declaring the plaintiff to be temporarily totally disabled is amended and compensation is to be determined in accordance with the formula in LSA-R.S. 23:1221(3) as amended by Acts 1975, No. 583 § 9.

PLAINTIFF'S CLAIM FOR PENALTIES AND ATTORNEY'S FEES
The plaintiff appeals the denial of penalties and attorney's fees by the trial court. We find no error with the trial court's denial based on its finding of a genuine legal dispute over liability for the September 16, 1982 accident. We therefore affirm the judgment of the trial court in that respect.
Accordingly, the judgment of the trial court in Royer v. Liberty Mutual Insurance Company, et al is reversed insofar as it denies reimbursement to Cliffs Drilling Company, Inc. for compensation and medical expenses paid after September 16, 1982, and is amended to allow a credit against the remaining portion of the judgment in satisfaction of any further obligations accruing to John Royer to the extent of the remaining portion of that judgment, and affirmed in all other respects. The judgment of the trial court in John Royer v. Cliffs Drilling Company, Inc., declaring the plaintiff to be temporarily totally disabled is amended, and judgment is herein rendered declaring him to be permanently partially disabled.
Costs of this appeal are to be borne equally by plaintiff and defendant.
AFFIRMED, AS AMENDED.
NOTES
[1] A "hot-shot" driver is employed to make fast deliveries of oilfield supplies and equipment to rigs.
[2] A "cheater pipe" is a length of pipe which, when inserted into the handle of a wrench, will create more leverage.