DOMENGEAUX, Judge.
This is an appeal from a suit brought by Melton Alexander against his former employer, Herman LaGrange, and LaGrange’s worker’s compensation insurer, Commercial Union Insurance Company. Alexander sought worker’s compensation benefits for an injury he alleged occurred while in the ■ employ of LaGrange, and penalties for the arbitrary and capricious refusal to pay those benefits.
The trial court rendered judgment in favor of the defendants, holding that the plaintiff was not entitled to worker’s compensation benefits and that the defendants’ decision to deny those benefits was neither arbitrary nor capricious.
Having thoroughly reviewed the record and researched the relevant law, we conclude that the judgment of the district court should be affirmed, and adopt the “Reasons for Judgment” of the trial judge as our own.
*541 REASONS FOR JUDGMENT[1]
“This is a suit for worker’s compensation benefits and additionally for penalties for arbitrary and capricious failure to pay benefits. Plaintiff alleges that on November 5, 1982, while working for defendant, he suffered, a back injury for which he obtained medical treatment and that as a result of these injuries he has been unable to obtain gainful employment. Plaintiff also alleges that defendants have refused to pay for medical services and have also refused to pay any worker’s compensation benefits. Defendant answered with a general denial except to admit that no weekly benefits have been paid. Defendants allege in the alternative that the accident and impairment complained of were not caused by plaintiff’s employment with defendant.
“The first issue to be resolved is whether or not plaintiff was entitled to worker’s compensation benefits. Although the worker’s compensation act has been interpreted liberally, a claimant must still prove his claim by a preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Lewis v. Alloy Casting of Louisiana, Inc., 465 So.2d 847 (La.App. 2nd Cir.1985) The act states that the claimant must prove his case by competent evidence. La.R.S. 23:1317. From this statute has developed the jurisprudential preponderance of the evidence rule. Thus, it is plaintiff’s burden to prove that he suffered a disability as a result of a work related accident.
“An additional problem of proof arises when, as in the instant case, plaintiff has been involved in a previous accident and sustains injury and then complains of injury from a second accident. The Royer court, Royer v. Cliffs Drilling Company, Inc., 465 So.2d 11 (La.App. 3rd Cir.1985), in citing Abshire v. Dravo Corp., 396 So.2d 521 (La.App. 3rd Cir.1981) found that “the critical issue in determining who bears the ultimate responsibility for the plaintiff’s disability is whether the same disability was present before the [second] accident or whether the accident aggravated the plaintiff’s back condition causing his disability.” 465 So.2d at 14. The Royer court further cited Abshire stating that “[t]he proper standard for determining whether an accident is the legal cause of the disability is simply whether the accident changed the plaintiff’s condition so as to render him disabled and unfit for his former employment.” 465 So.2d at 15.
“The facts as developed at trial show that the plaintiff is a 29 year old male laborer with an eleventh grade education. A review of plaintiff’s medical history is of importance here since plaintiff was involved in a previous accident in which he sustained an injury. Plaintiff’s previous injury occurred while he was working for J.B. Talley & Co. in the year 1980. A Dr. Jarrot of New Orleans found it necessary to operate on plaintiff’s back at the L4-5 and L5-S1 interspaces. Plaintiff testified that after the surgery he took two years off until he settled his compensation claim with J.B. Talley in January of 1982. He then worked for two weeks for Skelleys as a mechanic until he was laid off. Plaintiff further testified that he then went to work as a laborer on defendant’s cane farm in February of 1982. The evidence is conclusive from an examination of defendant’s work records that the plaintiff began working for the defendant on September 9, 1982[2] and was terminated on November 8, 1982; plaintiff worked for a period of six weeks for a total of 151 hours.[3] There was some conflict in the evidence presented at trial as to plaintiff’s wages but the records of defendant, which the court finds to be the most reliable evidence, show that plaintiff was paid an hourly wage of $3.50.
“The incident which is the subject of this suit occurred on November 5, 1982, while plaintiff was driving a tractor hauling cane. There were two witnesses to the incident, Dudley Taylor (sic) and Ulyses Charles *542 (sic)[4]. There is a conflict in their testimony; Taylor stated that plaintiff fell off the tractor while Charles testified that plaintiff jumped off the tractor. Plaintiff immediately went to work in the yard[5] for the rest of the day. Plaintiff testified that he went to work the next day but only worked until noon because of the pain and that he did not return to work after that date. Defendants’ records show that plaintiff worked on November 8,1982, the following Monday, for five hours. LaGrange, manager of defendant’s business, testified that he was aware of the accident two hours after it occurred and that he did make an accident report but not until one month later.
“Plaintiff first sought medical help when he visited Dr. Louis Weinstein[6] on November 9, 1982. The doctor found limited motion and plaintiff complained of pain and burning in the lumbo sacral area. The doctor did not take any x-rays. He saw plaintiff a total of eleven times. He found no objective symptoms whatever and recommended that plaintiff see an orthopedic surgeon. Plaintiff obtained physical therapy at Charity Hospital for a short period of time but testified that it did him no good.[7] Dr. Fred Webre, whose testimony was taken by deposition, examined plaintiff a month later. Dr. Webre, an orthopedic surgeon, first examined plaintiff on June 21, 1984. Plaintiff complained of pain in his lower back and in both hips and right thigh and leg. X-rays were taken but they just indicated a narrowing of the L4-5 and L5-S1 interspaces which were a result of the previous surgery. Dr. Webre found no indication of muscle spasm. The doctor saw plaintiff three times. He further testified that he found no objective symptoms. All of plaintiff’s complaints were subjective. Dr. Webre even went so far as to state that plaintiff’s complaint is the complaint of someone who is trying to put something over on the examiner. The doctor felt there was no reason why plaintiff should not go back to work. Dr. Webre did not come to the same conclusion as Dr. Larriviere, the next doctor to examine plaintiff. Dr. James Larriviere, a specialist in orthopedic surgery, initially examined plaintiff on May 13, 1984. Plaintiff complained of pain at the site of the incision from plaintiff’s previous surgery. The doctor took x-rays and his initial diagnosis was muscular ligament strain. He testified that there were no objective findings.[8] He found no spasm; all of the complaints were entirely subjective. The doctor recommended physical therapy. Dr. Larriviere next saw plaintiff on September 10, 1984. He gave plaintiff injections of cortisone but this did not help. Since conservative treatment was not working, the doctor then performed a thermography and an EMG, which tests showed a defect at the same level of plaintiff’s previous surgery. The doctor found no progression of symptoms, and testified on cross examination that he would not have approved cane field work after the first accident. Dr. Larriviere referred plaintiff to Dr. Rivet who examined plaintiff on January 28, 1985. Dr. Rivet did not testify and the evidence of his examination was presented in the form of a report. The doctor found abnormalities at the L4-5 and L5-S1 levels. The doctor stated that he found the patient quite difficult to examine because of his exaggeration of his pain. The doctor found both the sensory and motor examinations were therefore unreliable. The doctor felt that *543 plaintiff was in need of surgical intervention but he had reservations concerning his ultimate progress.
“The evidence presented at trial is clear and unequivocable as to the fact that the incident complained of did occur during the course and scope of plaintiffs employment. The plaintiff must not only show that the accident happened during the time and place of employment but further that there is a causal connection between the accident and the disability. When plaintiff was initially examined after the accident, Dr. Weinstein found no objective symptoms. There was no evidence of any objective findings until September 10, 1984, when Dr. Larriviere found a defect at the L4-5 and L5-S1 levels which were the sites of the previous surgery. During a period of almost two years following the accident the only evidence of any injury was plaintiffs subjective complaints of pain. Plaintiffs burden is met when the evidence, taken as a whole, shows that a causal connection between the employment activity and the injury is more probable than not. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Flood v. Hub Auto Parts, 425 So.2d 941 (La.App. 4th-Cir.1983). The Court may accept plaintiffs word if there is other credible corroborating evidence. See Flood, supra. In this instance the Court finds not only that there is no corroborating evidence, but further that plaintiffs testimony itself is totally unbelieveable. The testimony of plaintiff was impeached several times. Plaintiff testified that he began working for defendant in February of 1982 when the work records of the defendant clearly indicate that plaintiff did not begin work until September of 1982. Plaintiff further testified that he told the defendant about his previous injury; that he had talked about it at work several times. This testimony was not only contradicted by plaintiff himself in his deposition but also by his co-worker, Dudley Taylor (sic), who testified that he only found out about the previous accident after this accident and by Herman La-Grange, who testified that he only learned of the previous surgery after this accident. Plaintiff further testified that he told the doctors about his problems with sex and constipation but not one of the doctors affirmed this fact.[9] This Court finds, as did the Court in Heine v. Adams, 464 So.2d 836 (La.App. 5th Cir.1985), that plaintiffs credibility has been thoroughly impeached and thus will give little weight to his testimony.
“In addition to the testimony of the doctors and plaintiff, there was testimony by plaintiffs wife and father, his co-workers and his neighbor. The testimony of plaintiffs wife and father must be strictly stru-tinized since they clearly have an interest in the outcome of the case. Although plaintiffs wife and father testified that plaintiff was in pain and never did any work after the accident, this testimony was contradicted by the testimony of Joseph Robinson, plaintiffs neighbor. Mr. Robinson testified that he lives near the plaintiff and he knew him for some time. This witness testified that he saw plaintiff chop wood and carry water containers after the accident. The Court finds that there was no reason for Mr. Robinson to lie and he appeared to the Court to be a very credible witness. In taking the testimony as a whole, including both the testimony of the lay witnesses and the medical experts, the Court finds the evidence convincing that plaintiff did not suffer any injury as a result of the November 5th accident. The Court finds the evidence offered was positive and convincing enough to brand plaintiff a malingerer. This Court finds that plaintiff did not establish a causal connections by a preponderance of the evidence.
“The second issue to be resolved is whether defendants were arbitrary and capricious in their denial of workers compensation benefits. The Louisiana Supreme Court has held that a termination of compensation will not be held to have been arbitrary or capricious where the insurance carrier bases its decision to terminate on competent medical advice. Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982). *544 Injured employees may not be denied compensation on the basis of inconclusive medical reports. Hutchinson v. T.G. & Y. Stores Company, 412 So.2d 708 (La.App. 3rd Cir.1982); Alexander v. Dept. of Culture, Recreation and Tourism, 410 So.2d 1286 (La.App. 3rd Cir.1982).
“Defendants in the instant case relied on the reports of Dr. Weinstein which stated that objectively, there was nothing wrong with plaintiff. The reports of Dr. Wein-stein were competent medical advice. The doctor examined plaintiff eleven times and so his report can hardly be labeled as inconclusive. The Court finds that there was nothing arbitrary in defendant denying benefits on the basis of medical reports from plaintiff’s treating physician.”
Therefore, for the above and foregoing reasons, the judgment of the trial court, denying the plaintiff's claim for worker’s compensation benefits and for penalties for the arbitrary and capricious denial of those benefits, is affirmed.
All costs, at trial and on appeal, are assessed against the plaintiff-appellant.
AFFIRMED.

. All footnotes are those of the Appellate Court.

. The plaintiff commenced work for the defendant on September 27, 1982.

. The plaintiff worked a total of 161.5 hours.

. The two individuals who witnessed the incident were Natalie John Taylor and Ulysses Charles.

. The "yard” is the maintenance area of the farm.

. Testimony of the treating physician is entitled to great weight. Jaeckle v. Dresser Industries, Inc., 457 So.2d 646 (La.1984).

. No witnesses testified to substantiate the plaintiffs testimony. Absent explanation, the failure to produce evidence available to a litigant raises a presumption that the evidence would have been adverse to his cause. Martin v. T.L. James & Co., 112 So.2d 86 (La.1959) and Babineaux v. Black, 396 So.2d 584 (La.App. 3rd Cir.1981).

. Doctor Larriviere further testified that in order to believe Mr. Alexander was injured, it was necessary to believe the truthfulness of Mr. Alexander’s statements.

. Doctor Webre did passively refer to the plaintiffs constipation but, not in any context which would indicate causation with the plaintiffs alleged injury of November 5, 1982.