STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-1119

JEFFERY FUNDERBURK

VERSUS

NABORS DRILLING USA, INC.

**********
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 04-01335
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Glenn B. Gremillion, Judges.

AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART; AND RENDERED.

Harry K. Burdette
The Glenn Armentor Law Corp.
300 Stewart St.
Lafayette, LA 70501
(337) 233-1471
Counsel for Plaintiff/Appellant:
    Jeffery Funderburk

**Kevin A. Marks**
**Galloway, Johnson, Tompkins, Burr & Smith**
**701 Poydras St., 40th Floor**
**New Orleans, LA 70139**
**(504) 525-6802**
**Counsel for Secondary Defendant/Appellant:**
**Nabors Drilling USA, Inc.**

GREMILLION, Judge.

The plaintiff, Jeffery Funderburk, appeals the workers' compensation judge's finding that he has reached maximum medical improvement and is no longer entitled to indemnity or medical benefits stemming from his work-related injury. The defendant, Nabors Drilling USA, Inc., also appeals the workers' compensation judge's award of indemnity benefits. We reverse in part finding him still temporarily, totally disabled and entitled to further medical treatment and additional penalties and attorney's fees.

**FACTS**

The parties stipulated that Funderburk, a floor hand for Nabors Drilling USA, Inc., suffered a work-related injury to his lower back on July 24, 2003. He was treated at the Lake Charles Memorial Hospital Emergency Room and then driven to Lafayette, Louisiana, where he was seen by Nabors' orthopaedic surgeon, Dr. Michael Duval. After he returned to the rig, the evidence is conflicting as to what occurred; but, for whatever reason, Funderburk left the rig and returned home. He has not worked since that day, and he was terminated by Nabors shortly thereafter.

Funderburk went to the Christus St. Frances Cabrini Hospital Emergency Room in Alexandria on July 25, 2003, complaining of lower back pain, and was diagnosed with lumbar strain with possible disc disease. He then sought treatment from Dr. Elmer Raffai, an orthopaedic surgeon, in Eunice. Dr. Raffai noted muscle spasms in Funderburk's lower back and recommended that he undergo an MRI. The August 15, 2003 MRI revealed degenerative changes in multiple levels of his lumbar spine, with L3-4 being the worst. The radiologist noted diffuse degenerative bulging

1

discs at L2-3, L3-4, L4-5 and L5-S1 and a posterior annular tear and narrowing of the spinal canal at L3-4 and L4-5. Dr. Raffai referred Funderburk to Dr. Michael Holland, an orthopaedic surgeon, for consultation on the need for surgery.

Dr. Holland recommended a lumbar myelogram and CT scan after finding only subjective complaints of pain during his examination. As these tests revealed bulging at the above-stated levels, but no disc herniation, Dr. Holland found no indication for surgery and referred Funderburk to pain management upon his request. Funderburk then filed a disputed claim for compensation on February 25, 2004, alleging that Nabors arbitrarily and capriciously failed to authorize pain management treatment as recommended by Dr. Holland.

Dr. Holland referred Funderburk to Dr. Stephan Katz, for pain management treatment. After examining him on March 3, 2004, Dr. Katz felt that Funderburk would benefit from epidural steroid injections into his lower back. Until those were approved, he planned to treat him with medication. Nabors denied any further authorization for treatment with Dr. Katz.

Dr. Duval evaluated Funderburk for a second medical opinion on March 9, 2004. After examining him, his medical records, and his previous tests, he felt that a functional capacity evaluation (FCE) would be appropriate to determine a baseline and to determine whether Funderburk was valid in his presentation. If the results of the evaluation were valid, then Dr. Duval agreed that he should undergo further treatment. At this point, Joseph Sarkies, a claims adjustor for Kenneth Livaudais Claims Service, Inc., Nabors' third-party adjustor, requested an FCE for Funderburk. Dr. Holland agreed with this request.

2

On April 15, 2004, Funderburk sought treatment from the emergency room at St. Frances Cabrini, complaining of continuous pain, muscle spasms, and leg pain due to his lumbar spine complaints. The emergency room records reveal that the attending physician noted palpable pain, muscle spasms, and negative point tenderness in the spinous process.

After Sarkies scheduled a five-day, eight-hour-per-day FCE, Dr. Holland received a letter from Funderburk's counsel, which enclosed an April 19, 2004 statement from Dr. Katz that he did not believe Funderburk capable of withstanding a comprehensive FCE, as he had not yet initiated treatment for his condition. On May 12, 2004, Nabors obtained an order from the workers' compensation judge ordering Funderburk to attend the FCE.

Funderburk began the FCE on July 12, 2004; however, he only completed three days of the five-day evaluation. Trevor Bardarson, the administering physical therapist, found that the effort displayed by Funderburk was poor due to "inappropriate responses to valid tests and failed to find objective signs which validate the subjective presentation of the symptoms or impairments of the client. This behavior threatens the validity of this report." Bardarson stated that although he was unable to accurately determine Funderburk's ability to work, a sedentary level with restrictions was demonstrated. He further reported that Funderburk tested positive in two of five Waddell's categories: simulated rotation and distracted testing, particularly the supine versus seated straight leg raising tests.

Funderburk filed an amended disputed claim for compensation on August 31, 2004, again alleging that Nabors failed to authorize the pain management

3

treatment recommended by Dr. Holland and seeking penalties and attorney's fees as a result of its action.

Sarkies sent a copy of the FCE to Dr. Duval on September 9, 2004. After reviewing the evaluation, Dr. Duval opined that Funderburk was at maximum medical improvement (MMI). In his September 16, 2004 letter to Sarkies, he stated:

> Given the fact that this patient's myelogram shows no compressive lesions as well as the post-myelogram CT scan, I doubt seriously that a neurosurgical evaluation would be helpful or medically necessary. Given that the patient's functional capacity evaluation suggests symptom magnification, I would also not think a trial of epidural steroid injections or pain management referral is medically necessary.
>
> Since validity is in question, the best way to make an accurate assessment of this patient's physical capabilities are his radiologic studies, which are purely objective. When considering this patient's MR scan and CT myelogram alone, I would not place any physical limitations on his work capabilities.

Based on Dr. Duval's opinion, Sarkies terminated Funderburk's weekly indemnity benefits on October, 14, 2004. In response to Sarkies' inquiry, Dr. Holland also found Funderburk at MMI on November 22, 2004. Dr. Holland agreed with Dr. Duval that a trial of epidural steroids was unadvisable if Funderburk was magnifying his symptoms and, based on the MRI, myelogram, and CT scan, he placed no physical restrictions on his work status.

Funderburk sought medical treatment from the Louisiana State University Health Sciences Center in Shreveport, Louisiana, after Nabors refused to authorize further treatment. On October 19, 2004, he complained of lower back pain radiating down into the left leg. He had a positive straight leg raise test on the left and moderate muscle spasm. A November 24, 2004 MRI of the lumbar spine revealed degenerative changes with desiccated discs at L3-4, L4-5, and L5-S1; disc

4

protrusion at L4-5, with a radial tear in the annulus fibrosis; and a small synovial cyst on the left at L4-5.

On December 15, 2004, Funderburk returned to Dr. Raffai, still complaining of pain in his lower back. Dr. Raffai noted point tenderness, severe stiffness and muscle spasms at L5-S1 on palpation, and radiculopathy down both legs. He restricted Funderburk from working at that time. On December 16, 2004, Funderburk notified Nabors of Dr. Raffai's finding and off-work slip and requested that it reinstate his indemnity benefits. On January 4, 2005, he sent Nabors a copy of the LSU medical reports and notified it that he was scheduled for an epidural injection on January 5, 2005. On that date, he underwent a left lumbar transforaminal epidural steroid injection at L4-5 due to nerve root compression. Funderburk again forwarded LSU's medical records to Nabors on March 1, 2005, and requested that it pay all outstanding medical expenses.

This matter proceeded to a trial on the merits, after which it was taken under advisement. The workers' compensation judge issued oral reasons on June 24, 2005, finding that Funderburk was at MMI as of November 22, 2004, and that he was entitled to temporary total disability benefits from October 15, 2004 through November 22, 2004. He further awarded him $2000 in penalties and $2000 in attorney's fees as a result of Nabors' arbitrary and capricious termination of his indemnity benefits on October 14, 2004. Finally, the workers' compensation judge denied Funderburk's request for pain management treatment and a neurosurgical evaluation. A judgment was rendered in this matter on July 11, 2005. Funderburk has appealed the judgment, as has Nabors.

**ISSUES**

On appeal, Funderburk argues that the workers' compensation judge erred in finding that he was not entitled to any further indemnity benefits, pain management treatment, or a neurosurgical evaluation, and that Nabors was not arbitrary and capricious in refusing to authorize the recommended treatment. Nabors appeals arguing that the workers' compensation judge erred in awarding Funderburk indemnity benefits from October 15 through November 22, 2004. Funderburk answered this appeal requesting additional attorney's fees for work performed on appeal.

**STANDARD OF REVIEW**

As in any other civil matter, the standard of review applied in workers' compensation matters where the factual findings of the workers' compensation judge are called into question is the manifest error standard. This standard, which is based upon the reasonableness of the factual findings in light of the record reviewed in its entirety, is well established in our jurisprudence following the seminal cases of *Rosell v. ESCO*, 549 So.2d 840 (La.1989), and *Stobart v. State, through Department of Transportation and Development*, 617 So.2d 880 (La.1993). We will proceed with our review of the matter.

**DISABILITY AND TREATMENT**

In order to receive temporary total disability benefits, an employee must prove that he is unable to physically engage in any employment or self-employment as a result of his work-related injury. La.R.S. 23:1221(1)(c). The employee's burden of proof is by clear and convincing evidence; thus, Funderburk must prove that his

disability is highly probable or much more probable than not. *Carrier v. Debarge's Coll. Junction*, 95-18 (La.App. 3 Cir. 9/27/95), 673 So.2d 1043, *writ denied*, 96-0472 (La. 4/8/96), 671 So.2d 337.

With regard to medical treatment, La.R.S. 23:1203(A) provides that the employer shall provide all necessary treatment, including "medical and surgical treatment, or any nonmedical treatment recognized by the laws of this state as legal." An employee establishes a claim for medical benefits by proving by a preponderance of the evidence and to a reasonable certainty, the need for such treatment following his work-related accident. *Ware v. Allen Parish Sch. Bd.*, 02-1011 (La.App. 3 Cir. 5/21/03), 854 So.2d 374.

Funderburk testified that he was taken to Lake Charles Memorial Hospital's emergency room after he injured his back, where he received shots and pain medication for his injury. He said he was driven back to the rig and then to Nabors' Lafayette office so that he could see Dr. Duval, its orthopedic surgeon. Funderburk testified that Dr. Duval recommended that he be placed on limited duty, but that he was released to full duty after Sarkies requested it on the understanding that he would perform only light-duty work at the rig.

Funderburk testified that when he returned to the rig he was told by the tool pusher that no light-duty work existed, so he called his wife and went home. The next night, he went to the St. Frances Cabrini's emergency room due to lower back pain and was again treated with injections and pain medication. Shortly thereafter, he said that he requested treatment from Dr. Raffai, who ordered an MRI. Subsequently, he stated that Dr. Raffai referred him to Dr. Holland for a surgical

7

consultation. Funderburk further testified that Dr. Holland ordered a myelogram and post-myelogram CT scan and then told him that he did not require surgery. He said that he returned to Dr. Raffai for further treatment which was not approved by Nabors, and that he has not yet been released to work.

According to Funderburk, he sought treatment from Louisiana State University in Shreveport when Nabors refused to approve any further treatment. He stated that he underwent an epidural steroid injection and that he is scheduled for follow-up treatment there. He testified that the doctors at LSU have discussed surgery with him and that he is desirous of undergoing disc replacement surgery and would like to be evaluated by a neurosurgeon in Lake Charles. He stated that he requested authorization from Nabors to see that doctor, but that his request was denied.

Funderburk stated that he has not worked since the accident nor has he looked for work. He claims that he can drive short distances and use a computer; he also admitted that he has taken his son hunting since his accident. He testified that he takes pain medication approximately four times a day and that he was told to limit his sitting by his LSU doctors.

Debra, Funderburk's wife, testified that Dr. Raffai was Funderburk's choice of a treating physician. She stated that Dr. Raffai referred him to Dr. Holland for a surgical evaluation and that Dr. Holland in turn referred him for pain management and, possibly, for a neurosurgical evaluation. She testified that Funderburk was seen once by Dr. Katz for pain management, but that Nabors refused to authorize any further treatment by him. She stated that he is currently undergoing

8

treatment at LSU. She said that Funderburk is unable to drive or sit in the same position for very long and that he currently takes pain medication which cautions against driving while taking.

Sarkies testified that he initiated Funderburk's indemnity benefits on August 7, 2003, retroactive to July 25, 2003. He stated that payment of benefits continued until October 14, 2004. He stated that he further authorized both emergency room visits by Funderburk, his treatment with Drs. Raffai, Duval, and Holland, and all diagnostic testing and physical therapy. After determining that Funderburk's myelogram was normal, Dr. Holland suggested that he undergo pain management. Sarkies stated that he requested an FCE prior to Funderburk commencing pain management, to which both Drs. Holland and Duval agreed. When notified of the results, Sarkies testified that Dr. Duval felt that Funderburk was at MMI, he did not require any further treatment, and he could return to work without any restrictions. Based on Dr. Duval's report, Sarkies stated that he terminated Funderburk's indemnity benefits on October 14, 2004. He said that he then sent this information to Dr. Holland, who concurred with Dr. Duval's opinion. Despite the LSU medical reports, Sarkies did not think it would be reasonable for Drs. Holland and Duval to render a new opinion as to Funderburk's condition.

Dr. Holland saw Funderburk twice, once to examine him and once to review his tests. During his examination, he stated that Funderburk complained of pain with forward flexion, but did not exhibit any objective symptoms. He reviewed Funderburk's MRI, which revealed disc abnormality at L4-5, with a right-sided paracentral disc protrusion and facet arthropathy. He ordered a myelogram and post-

9

myelogram CT scan in order to determine whether Funderburk was suffering from a neural impingement. The tests revealed some bulging, but no disc herniation. They also revealed anterior indentations at multiple levels. Dr. Holland explained that this was considered normal in most cases. Although the tests revealed some findings, he testified that they indicated no need for surgery and, probably, that Funderburk had not even suffered an injury.

Based on the tests results, Dr. Holland agreed to Funderburk's request for six weeks of pain management treatment. However, at Sarkies' request, he consented to an FCE prior to Funderburk undergoing pain management. Upon Dr. Katz reporting that Funderburk would be unable to withstand a comprehensive FCE prior to receiving pain management treatment, he agreed that the epidural steroid injections could precede the FCE. However, he stated that he perceived no reasons why Funderburk could not withstand the FCE based on his previous presentation.

Subsequent to the FCE, Dr. Holland stated that he received a letter from Sarkies containing the results and Dr. Duval's opinion that Funderburk was at MMI. Dr. Holland testified that based on this information, he felt that Funderburk was at MMI on November 22, 2004. He further agreed with Dr. Duval that based on the findings of symptom magnification in the FCE, he did not feel that a trial of epidural steroid injections was necessary or that any physical restrictions should be placed on Funderburk. However, Dr. Holland agreed that while the findings on Funderburk's MRI, myelogram, and CT scan contained objective findings of abnormal lumbar discs, they revealed no indications for surgery. While he opined that surgery would fail if performed, he admitted that this did not mean that Funderburk was not

10

suffering from back pain or from a back injury. He further testified that he never found any signs of symptom magnification or positive Waddell's signs while examining Funderburk. He also added that a neurosurgical evaluation might be beneficial if other physicians or an FCE discovered some inconsistencies in his condition. Concerning the LSU medical reports, Dr. Holland refused to comment on those, other than stating that he would defer to Funderburk's treating orthopaedic surgeon regarding his current medical condition.

Dr. Duval examined Funderburk twice, once on the date of the accident and then for a second medical opinion on March 9, 2004. After the accident, Dr. Duval testified that Funderburk complained of pain in his lower back and left buttock and flank. He stated that he limped on his left leg and had difficulty squatting and with forward flexion. Finding no indication of significant nerve root compression, Dr. Duval recommended physical therapy, restricted Funderburk to light-duty work, and prescribed muscle relaxers and pain medication. He stated that he reviewed the August 15, 2003 MRI, which revealed three-level degenerative disc disease and a small central disc protrusion at L4-5. Dr. Duval found no need for surgery after reviewing this test.

On March 9, 2004, Dr. Duval testified that Funderburk complained of pain and numbness in both legs and a loss of motion. Dr. Duval stated that he found no objective physical findings in his examination and noted that Funderburk was positive for two of the four Waddell's signs. Based on this, he suggested that Funderburk undergo an FCE to determine the validity of his presentation. Since the FCE did reveal evidence of symptom magnification, Dr. Duval opined that

11

Funderburk was at MMI, that an evaluation by a neurosurgeon would not be fruitful, and that pain management treatment was unnecessary. Dr. Duval stated that Funderburk's entire clinical picture suggested that he was not being valid in his presentation. As his validity was in question, he testified that he looked to the radiological studies. As these did not show any significant compressive lesions, Dr. Duval felt that invasive procedures such as epidural steroids would be inappropriate and that no physical restrictions should be placed on Funderburk.

In refusing his request for indemnity benefits and medical treatment, the workers' compensation judge reviewed Funderburk's medical records. In reaching his decision, he stated that he placed very little weight on the medical reports from LSU, as they were very scant and because the doctors there found a left-sided bulge at L4-5. The workers' compensation judge noted that no such mention was reported in either of the two MRIs or in the myelogram and post-myelogram CT scan. He further stated:

> While Dr. Holland admitted there are abnormalities on Mr. Funderburk's diagnostic testing, he stated that those abnormal findings were not really abnormal for a person over the age of 30 and that based on his clinical evaluation and examinations that there was nothing significant found in the radiological studies. In particular, the myelogram and the post-myelogram CT scans showed no disc herniations. If you look at all the records over the course of time, Mr. Funderburk's complaints begin at L5-S1, his sacrum. From there, they seem to move all around his back to both his legs, whether they're left or right. There was questions asked of Dr. Holland about an annular tear and whether or not a closed MRI was better than an opened [sic] MRI. But the open MRI showed an annulus [sic] tear. Dr. Holland reviewed the films. He said there was nothing significant there. The physicians who saw Mr. Funderburk at LSU-Shreveport subsequent to the MRI – the closed MRI didn't make any mentions about any annular tear. They find a L4-L5 left sided bulge. I don't know. It's not mentioned in the report from the closed MRI and it certainly wasn't there in the MRI in

12

August of 2003. Nothing was there on the myelogram and post-myelogram CT scan.

Essentially, what I have here is a case where the only thing consistent in behalf of Mr. Funderburk's case is the inconsistency of all of his presentations to all the various physicians, the inconsistencies affirmed by the FCE performed in July of 2004. I pledge great reliance on the testimony and examinations of Dr. Holland and Dr. Duval above those at LSU-Shreveport. I find that Mr. Funderburk has failed to prove by a reasonable preponderance that he is entitled to pain management, that he's entitled to a neurosurgical evaluation. I also find that Mr. Funderburk has failed to prove that he is entitled to any further workers' compensation benefits. He has a full release from Dr. Holland and Dr. Duval. The records from LSU-Shreveport make no mention of his working capacity.

After reviewing the record exhaustively, we find that the workers' compensation judge was clearly wrong in finding that Funderburk was at MMI, that he is no longer entitled to indemnity benefits, and that he is not entitled to any further medical treatment. All of the diagnostic tests reveal that Funderburk has protruding discs at multiple levels. The August 15, 2003 MRI found bulging discs at L2-3, L3-4, L4-5, and L5-S1, with the bulge at L3-4 being left paracentral, the one at L4-5 being somewhat central/right paracentral, and the one at L5-S1 being slightly more prominent centrally. The myelogram and the post-myelogram CT scan also revealed generalized disc bulging at L2-3, L3-4, and L4-5, whereas the post-myelogram CT revealed generalized bulging at L3-4 and L4-5. Neither of these tests stated whether the bulging was right, left, or centrally located. The November 24, 2004 MRI revealed degenerative changes and disc desiccation at L3-4, L4-5, and L5-S1, with a disc protrusion focal at L4-5 mostly compromising the left lateral recess and anterolateral epidural space.

13

While Dr. Holland said that these findings are fairly common and are considered normal in most cases, he admitted that they are still objective, abnormal findings. Regardless of them, he found no need for surgical intervention. Despite this finding, Dr. Holland admitted that it did not rule out whether Funderburk was indeed suffering from back pain or a back injury. He limited his opinion to the need for surgery.

In addition to the diagnostic tests, Funderburk exhibited objective findings via muscle spasms noted in his lumbar spine on numerous occasions. Dr. Raffai noted the presence of muscle spasms every time he examined Funderburk. Muscle spasms were also noted in the emergency room records of St. Frances Cabrini on April 15, 2004, and on three different occasions when he was examined at LSU, the latest being December 30, 2004. We find that these are definitely objective findings.

With regard to LSU's medical records, the workers' compensation judge stated that he did not place any significant weight on them as they were scant and because depositions were not taken of the physicians. However, in examining the record, we find that none of the examining physicians' medical records contain much information. Funderburk was examined four times by Dr. Raffai, twice by Dr. Duval, and once by Dr. Holland. He was examined on four different occasions at LSU, in addition to receiving the epidural steroid injection. Although depositions were taken from Drs. Holland and Duval, we do not feel that greater emphasis should be given to their medical records, as we find that Funderburk has, in reality, received very little

14

treatment for his condition. All that has been determined is that Drs. Holland and Duval found no need for surgery.

On the issue of symptom magnification, we find that this was noted only twice in Funderburk's records, first by Dr. Duval and then in the FCE report. Dr. Duval found Funderburk positive for two of four Waddell's signs; the FCE noted that he was positive for two of five signs. However, Bardarson stated that a positive for three of five would be clinically significant. No Waddell's signs were noted by Dr. Holland, who stated that he looked for such findings, and none were noted in either Dr. Raffai's medical records or in the medical records from LSU. Moreover, Dr. Katz stated, in response to a question from Funderburk's attorney, that he did not feel that Funderburk would be capable of withstanding a comprehensive FCE, as he had not yet initiated treatment for his condition.

After considering the foregoing evidence, we find that Funderburk has carried his burden of proving that he is still temporarily, totally disabled. At his December 15, 2004 examination, Dr. Raffai, who is Funderburk's choice of treating orthopaedic surgeon, restricted him from working after noting point tenderness, stiffness, trouble walking, severe stiffness and muscle spasms at L5-S1, and radiculopathy in both legs during his examination. We further find that he has proven by a preponderance of the evidence that he is entitled to further medical treatment, more specifically, pain management treatment and a consultation with a neurosurgeon. Even Dr. Holland felt that an evaluation by a neurosurgeon would be helpful if other physicians discovered inconsistencies in his condition. The finding of nerve root compression by the physicians at LSU is such an inconsistency.

15

Accordingly, we find that the workers' compensation judge erred in terminating Funderburk's temporary total disability benefits as of November 22, 2004. The judgment of the workers' compensation judge is reversed and judgment is now rendered ordering those benefits reinstated. We further find that the workers' compensation judge erred in finding that Funderburk was not entitled to pain management treatment and consultation with a neurosurgeon of his choice. Nabors is, hereby, ordered to authorize both. Moreover, based on the foregoing findings, Nabors' assignment of error is rendered moot.

## PENALTIES AND ATTORNEY'S FEES

In his next assignment of error, Funderburk argues that the workers' compensation judge erred by finding that Nabors was not arbitrary and capricious in failing to authorize the requested medical treatment.

An employer avoids the imposition of penalties and attorney's fees by satisfying its continuing obligation to investigate, assemble, and assess factual information prior to it denying benefits. *Wright v. Cypress Gen. Contractors, Inc.*, 05-700 (La.App. 3 Cir. 12/30/05), 918 So.2d 526.

In this instance, Sarkies terminated Funderburk's indemnity benefits and refused to authorize any further medical treatment based on Drs. Duval and Holland's determination that he had reached MMI by September 16, 2004 and November 22, 2004, respectively. Funderburk's weekly indemnity benefits of $416 were terminated on October 14, 2004. Following the rendition of Drs. Duval and Holland's opinions, Nabors received notice of Dr. Raffai's December 15, 2004 medical report and his off-work slip for Funderburk by a December 16, 2004 letter from his counsel. It also

16

learned of LSU's medical records in a January 4, 2005 letter. Additional information, including that pertaining to the January 5, 2005 epidural steroid injection, was sent on March 5, 2005, although Nabors insisted that it did not receive this information until the morning of trial. The matter proceeded to trial on April 12, 2005.

Sarkies said that he never personally received the above-stated information, although they were received by Nabors' counsel. However, he stated that he would not have provided this information to Drs. Duval or Holland, as they had already said that no further testing or treatment was necessary. Based on this information, we find that Nabors was arbitrary and capricious in failing to investigate Funderburk's claim in light of its reliance on Drs. Duval and Holland's opinions. Accordingly, we award Funderburk $2000 in penalties and his award of attorney's fees to increase it from $2000 to $5000 as a result of Nabors failure to further investigate his claim and to authorize further medical treatment.

**ANSWER ON APPEAL**

Finally, Funderburk has answered Nabors' appeal requesting that he be awarded further attorney's fees based on the work performed by his counsel on appeal. Based on our decision, we award him an additional $3000 for attorney's fees.

**CONCLUSION**

For the foregoing reasons, the workers' compensation judge's judgment is affirmed in part, amended in part, and reversed in part. Judgment is now rendered in favor of the plaintiff-appellant, Jeffery Funderburk, finding that he is temporarily, totally disabled and entitled to weekly indemnity benefits of $416 per week and further medical treatment in the form of pain management treatment and a

17

neurosurgical evaluation. It is further ordered, adjudged, and decreed that Funderburk is awarded an additional $2000 in penalties, and we amend his award of attorney's fees to increase it to $5000 for the failure of Nabors Drilling USA, Inc. to further investigate his claim and to authorize further medical treatment. We also award him an additional $3000 in attorney's fees for additional work performed on appeal. The costs of this appeal are assessed to the defendant-appellee-appellant, Nabors Drilling USA, Inc.

**AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART; AND RENDERED.**

18