# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 12-854


**MARTHA DIANA ROUGEOU**

**VERSUS**

**ST. FRANCIS CABRINI HOSPITAL**



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 11-05846
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN E. CONERY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.



**AFFIRMED.**



**Daniel Elmo Broussard, Jr.**
**Broussard, Bolton, Halcomb**
**Post Office Box 1311**
**Alexandria, Louisiana 71309**
**(318) 487-4589**
**COUNSEL FOR PLAINTIFF APPELLEE:**
    **Martha Diana Rougeou**

**John Chris Turnage**
**Mayer, Smith & Roberts**
**1550 Creswell**
**Shreveport, Louisiana 71101**
**(318) 222-2135**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **St. Francis Cabrini Hospital**

**CONERY, Judge.**

In this workers' compensation case, Defendant, St. Francis Cabrini Hospital, (Cabrini) appeals a judgment of the workers' compensation judge (WCJ) in favor of its employee, Martha Diana Rougeou (Rougeou). For the following reasons, we affirm and award Rougeou additional attorney fees.

## FACTS AND PROCEDURAL HISTORY

Rougeou filed a LDOL-WC-1008 Disputed Claim for Compensation Form (1008) against Cabrini on August 8, 2011, seeking to receive the cost of a surgical procedure recommended by her neurosurgeon, Dr. Aril Nanda. Rougeou claimed the need for surgery resulted from an incident which occurred on February 8, 2011, while she was in the course and scope of her employment as a Registered Nurse with Cabrini at Central Louisiana Imaging Center. Rougeou was assisting Dr. William Long with a medical procedure on a patient who was undergoing a wrist arthrogram. The procedure required the patient to sit on a low stool with her wrist extended over the x-ray table. Dr. Long began to insert a needle into the patient's arm in order to inject dye required for an MRI when the patient fainted and began falling from the stool. Rougeou and Dr. Long caught the patient and prevented her from hitting the floor and sustaining injury. At the time of the incident, Rougeou was wearing a twelve-pound lead-lined apron extending from her shoulders to her knees. Rougeou began to experience symptoms of pain in her neck and shoulders beginning that evening and becoming worse the next day.

The incident was reported and an initial report was made of the incident. Three days later, on February 11, 2011, Rougeou was referred by the Cabrini health nurse to her employer's doctor, Dr. Gordon Webb at Louisiana Occupational Health Services. Dr. Webb diagnosed Rougeou with neck and shoulder strain. He prescribed Ibuprofen and Valium, restricted her from wearing

the lead apron and transferring patients at work, and referred her to physical therapy three times a week.

Rougeou's symptoms persisted, and, after a month of conservative treatment, Dr. Webb ordered an MRI of the cervical spine. Rougeou had previously undergone an MRI in 2007 (2007 MRI) in connection with an anterior cervical discectomy at C5-6. Upon review of the 2011 MRI, Dr. Webb observed that the 2011 MRI was significantly worse than the 2007 MRI at C6-7, and referred Rougeou to Dr. M. Lawrence Drerup, a neurosurgeon. Rougeou, however, preferred to return to Dr. Nanda, the neurosurgeon who treated her in 2007.

On May 24, 2011, Dr. Nanda advised Rougeou to continue her physical therapy and also to undergo a series of epidural steroid injections (ESIs). He told Rougeou that if her symptoms did not abate, he would recommend a surgical intervention. Dr. Nanda's recommended conservative treatment of physical therapy and ESI injections provided only temporary relief. Rougeou sought the recommended surgery by Dr. Nanda, but the request for surgery was denied by Cabrini's third-party administrator, FARA. [1]

In her 1008, Rougeou sought penalties and attorney fees in addition to the recommended surgical procedure by Dr. Nanda. Rougeou, however, had not missed any work due to the February 8, 2011 incident, and thus did not seek past indemnity benefits from Cabrini.

Cabrini answered and asserted the defense of fraud, pursuant to La.R.S. 23:1208. Cabrini claimed that Rougeou committed fraud during an April 1, 2011 telephone interview conducted by Joanne Cannatella of FARA on behalf of Cabrini. Specifically, Cabrini claimed Rougeou was not truthful in her responses to questions relating to Rougeou's history of her cervical spine problems and her previous cervical discectomy at C5-6 some twelve to thirteen years earlier. It

---

[1] On September 19, 2011, the WCJ granted a joint motion to dismiss FARA, Cabrini's third-party administrator, without prejudice.

should be noted that the telephone interview, on April 1, 2011, came well after Dr. Webb's treatment, which began on February 11, 2011 and continued for a month thereafter.

In connection with the line of questioning involving Rougeou's cervical spine, Cannatella asked Rougeou whether she had "any other problems" with her neck "since that time." Rougeou replied, "No, not really." This appears to be the sole basis of the so-called "fraud" alleged by Cabrini. In its Answer, Cabrini further claimed the need for the recommended surgery by Dr. Nanda was not causally related to the February 8, 2011 incident, but was a pre-existing condition, which was not aggravated by the on-the-job incident.

The matter was tried on February 29, 2012, and the parties were given an opportunity to file post-trial briefs with citations to the pages in the record supporting their positions. Additionally, counsel submitted Joint Exhibit 1 consisting of a timeline of Rougeou's medical history dating back to 1997.

On April 30, 2012, the WCJ issued oral reasons for judgment. Counsel for Rougeou was requested to prepare a written judgment in accordance with the ruling of the WCJ in favor of Rougeou. The Judgment was signed on May 9, 2012, and ordered: 1) Cabrini to authorize the medical treatment recommended by Dr. Nanda and to pay all past accident-related medical expenses that are outstanding and unpaid at this time; 2) Cabrini to pay indemnity benefits for any period of time Rougeou is required to miss her employment if, and when, surgery should take place; 3) Costs in the total amount of $2,232.00 for deposition fees and medical records; 4) $4,000.00 in penalties for Cabrini's arbitrary and capricious failure to authorize the medical treatment of Rougeou as recommended by her treating neurosurgeon, Dr. Nanda; and 5) $7,500.00 in attorney fees for prosecution of her claim, together with judicial interest on all amounts from date of judgment until paid.

Cabrini now appeals, asserting the WCJ committed manifest error in: 1) denying Cabrini's defense of fraud pursuant to La.R.S. 23:1208; or 2), in the alternative, finding Rougeou was entitled to medical benefits and/or treatment with Dr. Nanda by meeting her burden of proof that she was injured or aggravated a previous medical condition in the on-the-job accident; and 3) finding that Cabrini was arbitrary and capricious in its denial of the recommended surgery, in awarding penalties and attorney fees, and in determining the amount of penalties and attorney fees.

## DISCUSSION

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Foster v. Rabalais Masonry, Inc.,* 01–1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied,* 02–1164 (La. 6/14/02), 818 So.2d 784 (citation omitted).

In *Green v. National Oilwell Varco*, 10-1041, pp. 3-4 (La.App. 3 Cir. 4/27/11), 63 So.3d 354, 358, we explained:

> "The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.,* 404 So.2d 218, 220 (La.1981). This court has held that, in light of that standard of review, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Cent. Lumber Co. v. Duhon,* 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied,* 04-315 (La. 4/2/04), 869 So.2d 880 (quoting *Garner v. Sheats & Frazier,* 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61).

*Louisiana Revised Statutes 12:1208 - Fraud*

"The determination by a WCJ as to whether a claimant has made a false statement, willfully, for the purpose of obtaining workers' compensation benefits is a finding of fact, and is, therefore subject to the manifest error standard of review."

4

*Jim Walter Homes, Inc. v. Guilbeau,* 05-1473, p.5 (La.App. 3 Cir. 6/21/06), 934 So.2d 239, 243.

Louisiana Revised Statutes 23:1208 provides, in pertinent part:

> (A)   It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> ….
>
> (E)   Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

In order for there to be a forfeiture of workers' compensation benefits under La.R.S. 23:1208, the employer must prove (1) the claimant made a false statement or representation, (2) that the statement was willfully made, and (3) the statement was made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7; *Babineaux v. Moss Motors,* 06-749 (La.App. 3 Cir. 12/6/06), 944 So.2d 882. However, the mere making of inadvertent or inconsequential false statements will not result in forfeiture. *KLLM, Inc. v. Reed*, 00-295 (La.App. 3 Cir. 10/11/00), 771 So.2d 728.

### *False Statement or Representation*

The basis of Cabrini's claim that Rougeou committed fraud pursuant to La.R.S. 23:1208 is the April 1, 2011 recorded statement taken by Joanne Cannatella, the insurance adjuster for FARA, Cabrini's third-party administrator. The claim of fraud primarily focuses on the statements made by Rougeou in connection with her previous back problems, more specifically her cervical spine.

The WCJ thoroughly reviewed the transcript of the April 1, 2011 recorded statement of Rougeou and found as follows in his oral reasons:

A review of that statement indicates that the adjuster, at the time she took the statement, was well aware that Ms. Rougeou had had the cervical surgery some 12 or 13 years ago and also was aware that she had had the lumbar disc surgery in the past. It was discussed with the injured worker, as well as with the insurance adjuster, and we got to a point in the recorded statement when the adjuster asked, "Okay. Wait. Let me stay with the neck. Were you able to go back -- were you able to go back to work; go full duty?" Rougeou's response was, "Yes," but this next question was, "okay. Have you had any other problems with your neck since that time?" Rougeou's response was, "No. Not really," and from that, the affiliates contend that Ms. Rougeou has violated Revised Statute 23:1208.

The WCJ also reviewed Joint Exhibit 1, prepared by Rougeou's counsel and submitted as Joint Exhibit 1, at the close of trial. The document contained a medical synopsis of all of Rougeou's medical care dating from August 18, 1997 to May 24, 2011---the date of her first appointment with Dr. Nanda. In his review of Joint Exhibit 1 and the reports of her treating physicians, the WCJ focused on the claim by the employer Cabrini that Rougeou "had misrepresented her past medical care . . . by saying, 'No. Not really.' to problems with regard to her neck."

The WCJ subsequently determined that each of the misrepresentations Cabrini claimed were made to the insurance adjuster by Rougeou had previously been disclosed and noted in the records of Dr. Webb, the employer's physician, and, thus, were available to the insurance adjuster prior to the April 1, 2011 interview. Certainly it would have been possible for the adjuster to have specifically questioned Rougeou with respect to her prescriptions and the use of the medication Flexeril, as well as her previous pre-incident MRIs and her ESIs.

The record is clear that, in her appointment with Dr. Webb on February 11, 2011, Rougeou disclosed that she was taking Flexeril prior to her accident. In Dr. Webb's report of March 14, 2011, he notes Rougeou reported she had undergone pre-incident MRIs, the most important of which was the 2007 MRI. In fact, a comparison of the 2007 MRI with the 2011 study resulted in Dr. Webb's referral of Rougeou to a neurosurgeon, ultimately Dr. Nanda.

Further Dr. Webb's report of March 14, 2011 contains a discussion of cervical injections (ESIs) performed by Dr. Stephen Rice. In his deposition, Dr. Rice could not recall giving Rougeou any cervical injections in the interim and medical records reflect the last cervical injection given by Dr. Rice to Rougeou was in 2003.

After reviewing the testimony and evidence presented at trial, we find no manifest error in the WCJ's determination that no false statement or representation was willfully made by Rougeou in an attempt to obtain workers' compensation benefits for the surgery recommended by her treating physician, Dr. Nanda, as that determination necessarily required the WCJ to assess the credibility of the witness. We conclude that, when viewed in its entirety, the evidence supports Rougeou's explanation of her "No. Not Really." response to the questions concerning her cervical spine and pre-incident medical condition in the April 1, 2011 interview. Rougeou's responses were accepted as credible by the WCJ, and, thus, Cabrini's first assignment of error lacks merit.

*Causal Connection*

"To establish that a claimant is entitled to workers' compensation benefits, claimant must prove by a preponderance of the evidence that an accident occurred during the course and scope of his employment; the accident caused his injuries; and the injury caused his disability." *Ceasar v. Crispy Cajun Rest.*, 94–30, p. 3 (La.App. 3 Cir. 10/5/94), 643 So.2d 471, 473, *writ denied*, 94–2736 (La.1/6/95), 648 So.2d 931 (citing *Kennedy v. Sec. Indus. Ins. Co.*, 623 So.2d 174 (La.App. 1 Cir.), *writ denied*, 629 So.2d 389 (La.1993)).

Louisiana Revised Statutes 23:1021(1) defines an "accident," for workers' compensation purposes, as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault,

and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."

A "workers' compensation judge's determinations on whether the employee's testimony was credible and on whether the employee met his burden of proof are factual findings not to be disturbed on appeal absent manifest error." *Jack v. Prairie Cajun Seafood Wholesale,* 07–102, pp. 4–5 (La.App. 3 Cir. 10/3/07), 967 So.2d 552, 555–56, *writ denied,* 07–2388 (La. 2/15/08), 976 So.2d 178 (citations omitted). In *Corbello v. Coastal Chem. Co., Inc.,* 02–1241, p. 3 (La.App. 3 Cir. 3/5/03), 839 So.2d 1152, 1154, *writ denied,* 03–994 (La. 5/30/03), 845 So.2d 1051 (quoting *Mitchell v. Brown Builders, Inc.,* 35,022, p. 8 (La.App. 2 Cir. 8/22/01), 793 So.2d 508, 515, *writ denied,* 01–2649 (La.12/14/01), 804 So.2d 636), this court stated:

> It is a well-settled legal principle that the factual findings in workers' compensation cases are entitled to great weight. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. The trier of fact's factual determinations shall not be disturbed in the absence of a showing of manifest error. When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence.

It is undisputed that the accident which occurred on February 8, 2011 was in the course and scope of Rougeou's employment with Cabrini and was witnessed by Dr. Long. Rougeou was injured while wearing a twelve-pound lead-lined apron extending from around her neck to her knees, while attempting to assist Dr. Long in preventing a patient from falling to the floor during a medical procedure. It is also undisputed that, even with her restrictions, Rougeou has not missed work as a result of the incident and is therefore not claiming past indemnity benefits.

Cabrini urges that the WCJ committed manifest error in finding that the February 8, 2011 incident was causally related to Rougeou's need for surgery on C6-7, which Cabrini argues was instead the result of a pre-existing condition,

8

degenerative in nature, and, thus, not related to the incident by either cause or exacerbation of her previous medical condition.

It is undisputed in this case that the 2007 MRI and the 2011 MRI, requested by Dr. Webb, the employer's doctor, showed significant changes. A proper referral was made to a neurosurgeon, and Rougeou properly elected to be treated by her former treating physician, Dr. Nanda. As stated by the WCJ in his ruling, Dr. Nanda's reports indicate his review of the 2011 MRI, compared with the 2007 MRI, revealed "multilevel disease, worse at C5-6, C6-7. C5-6 is where she had the previous surgery, and to a lesser degree at C4-5. C6-7 is the worst; with predominate disc osteophyte complex and right-level recess stenosis."

The WCJ noted the following: Rougeou underwent an MRI in 2007 and had a suggestion of surgery from Dr. Nanda. Rougeou was, however, reluctant to undergo another surgical procedure, having undergone an anterior cervical discectomy at C5-6 in 1997 performed by Dr. Russ Greer. Dr. Nanda suggested, "Why don't you try some physical therapy and other low-conservative modality before we jump off into surgery." The discussion of surgery for C6-7 between Rougeou and Dr. Nanda occurred in 2007 or 2008. The record reflects that Rougeou had no other neck or back-related medical care, except a prescription for Flexeril. There is no evidence in the record of any physical therapy or injections until after the work-related incident of February 8, 2011.

In the case of *Rivers v. Bo Ezernack Hauling Contractor, Inc.*, 09-991 (La.App. 3 Cir. 3/10/10), 32 So.3d 1091, *writ denied,* 10-807 (La. 6/4/10), 38 So.3d 309, cited by the WCJ in his opinion, the claimant had significant pre-existing back problems and a pre-existing surgery before suffering an on-the-job incident when a log truck rolled over. The employer claimed that Rivers did not sustain any additional injury in the rollover accident, refused to pay for the recommended surgery, and terminated Rivers' compensation benefits. This court

9

affirmed the WCJ's ruling in favor of Rivers requiring the employer to pay for the recommended surgery and pay all compensation benefits owed, along with penalties and attorney's fees. *Id.*

Here, the WCJ compared the similarities and differences between Rivers and Rougeou in his ruling. Both Rivers and Rougeou had not had any previous problems since their prior surgeries, just intermittent pain. He further noted that Rivers' past medical history reflected many more follow-up appointments since his previous surgery, including in the last nine months just before the subject accident, a much shorter time than any pre-accident treatment received by Rougeou.

The WCJ found that the deposition of Dr. Nanda supported Rougeou's position that the incident on February 8, 2011, was causally connected to the occurrence of Rougeou's complaints and need for surgery. The WCJ also relied on the results of the previous 2007 MRI and the new 2011 MRI, which showed significant changes especially at C6-7. Thus the WCJ correctly determined that Rougeou's ongoing problems were causally related to the work-related incident of February 8, 2011.

***Aggravation of Pre-Existing Condition***

In *Abshire v. Dravo*, 396 So.2d 521, 524-25, (La.App. 3 Cir. 1981), this court found in favor of the claimant, Abshire, after he suffered aggravation of a pre-existing injury and stated as follows:

> Plaintiff also was suffering a tolerable degree of pain until he was struck by the falling piece of salt and that pain then increased to an intolerable level. The proper standard for determining whether an accident is the legal cause of the disability is simply whether the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment. *Allen v. Milk Haulers, Inc.,* 278 So.2d 871 (La.App. 1st Cir. 1973). Plaintiff has met this standard.

Cabrini argues the testimony of Dr. Nanda, i.e., that a "possible" connection existed, does not support the preponderance of the evidence standard required for Rougeou to connect the incident of February 8, 2011, to her ongoing problems.

10

The WCJ found the testimony of Rougeou was credible. Her testimony reflects she suffered the same neck problems before the February 8, 2011 incident. However, the "intensity" of her pain after the incident was "much worse" than before the February 8, 2011 incident.

The WCJ's determination that Rougeou was credible, coupled with Dr. Nanda's deposition testimony, meets the required preponderance of the evidence standard. Causation is not necessarily a medical conclusion, and the ultimate determination as to whether a plaintiff has proved the causation of his/her disability is made by the courts and not by medical experts. *Bush v. Avoyelles Progress Action Comm.*, 07-685 (La.App 3 Cir. 10/31/07), 970 So.2d 63; *Martin v. H.B. Zachry Co.,* 424 So.2d 1002 (La.1982). Rougeou's claim for the recommended surgery should have been granted by Cabrini.

Under Louisiana law, the employer takes the employee as he finds him, and it is well-settled that the aggravation of a pre-existing condition is fully compensable. *Abshire,* 396 So.2d 521. After reviewing the testimony and evidence presented at trial, we find no manifest error in the WCJ's determination that the incident of February 8, 2011, constitutes an aggravation of Rougeou's pre-existing condition, based on her credible testimony that the "intensity" of her pain had increased and grown "much worse," thus necessitating the recommended surgery. Cabrini's second assignment of error also lacks merit.

***Penalties and Attorney Fees***

Louisiana Revised Statutes 23:1201(F) provides that a claimant is entitled to an award of penalties and attorney fees for her employer's failure to pay compensation or medical benefits unless the WCJ finds that the employer reasonably controverted the claim or that nonpayment was the result of conditions not under control of the employer.

"Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed." *Williams v. Rush Masonry, Inc.*, 98-2271, pp. 8-9 (La. 6/29/99), 737 So.2d 41, 46 (citation omitted). An appellate court reviews the WCJ's decision to award penalties and attorney fees using the manifest error/clearly wrong standard of review. *Ducote v. La. Indus., Inc.*, 07-1536 (La.App. 3 Cir. 4/2/08), 980 So.2d 843.

In this case, the WCJ assessed Cabrini with a $4,000.00 penalty for Cabrini's termination of Rougeou's medical care and the denial of the recommended surgery by Dr. Nanda. Cabrini was also assessed with $7,500.00 in attorney fees.

Cabrini contends that because it reasonably controverted Rougeou's claim, this court should reverse the WCJ's imposition of penalties and attorney fees. It submits that an employee should not be entitled to an award of penalties and attorney fees simply because she prevails on the underlying issue of compensability.

Cabrini further contends the April 1, 2011 recorded statement coupled with Rougeou's previous medical condition, which included a recommendation in 2007 for the same surgery sought by Rougeou in this case, supported its claim of fraud. Therefore, Cabrini argues, it was not arbitrary and capricious in terminating Rougeou's medical benefits and denial of the recommended surgery. Cabrini further urges, notwithstanding the fraud claim, this case presented a close factual question based on causation, and an award of penalties and attorney fees is not warranted under the circumstances.

Rougeou counters that penalties and attorney fees were properly awarded because Cabrini's denial of her claim was unreasonable. Rougeou contends she

never had any pre-incident neck problems from 2007 to 2011 substantial enough to require her to miss work or seek surgical intervention prior to the February 8, 2011 incident. Thus, the need for the required surgery after the failure of conservative treatment was proven. Cabrini's denial of the recommended surgery based on the alleged misrepresentations in the April 1, 2011 recorded statement was without merit, and the record supports the WCJ's imposition of penalties and attorney fees.

Despite Rougeou's past medical history, the changes between the 2007 MRI and the 2011 MRI clearly showed her cervical spine was much worse after the accident. The record reflects that Cabrini focused on and expected to prevail on the claim of fraud and misrepresentation by Rougeou based on her April 1, 2011 recorded statement. However, the WCJ found Rougeou to be credible and was impressed with her work ethic, her willingness to pursue conservative treatment prior to seeking surgery, and her attempt to continue to work despite the discomfort. We are convinced that the WCJ did not manifestly err in finding that Cabrini failed to reasonably controvert Rougeou's claim for the recommended surgery and other medical benefits. Further, Cabrini offered no independent medical expert. Cabrini's third assignment of error also lacks merit.

*Answer to Appeal*

In her answer to appeal, Rougeou requests additional attorney fees for having to answer and defend this appeal. In *Nash v. Aecom Technical Corp.*, 07-990, p. 8 (La.App. 3 Cir. 2/6/08), 976 So.2d 263, 268, this court held that "[a] workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending an employer/insurer's unsuccessful appeal." We award Rougeou additional attorney fees in the amount of $5,000.00 for the work done on appeal.

**DECREE**

For the forgoing reasons, we affirm. We further award Martha Diana Rougeou additional attorney fees of $5,000.00 for having to answer and defend this appeal. St. Francis Cabrini Hospital is cast with all costs of this appeal.

**AFFIRMED. ADDITIONAL ATTORNEY FEES AWARDED TO APPELLEE.**