396 So.2d 521 (1981)
Doris J. ABSHIRE, Plaintiff-Appellee,
v.
DRAVO CORPORATION et al., Defendants-Appellants.
No. 8116.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1981.
*522 Landry, Watkins & Bonin, James O. Salley, New Iberia, for defendants-appellants.
Thompson & Sellers, Rogers C. Sellers, Abbeville, for plaintiff-appellee.
Before GUIDRY, CUTRER and LABORDE, JJ.
CUTRER, Judge.
This a workmen's compensation suit. The plaintiff, Doris Abshire, alleges that he was struck on the back by a large piece of salt which fell upon him while he was employed as a miner at Dravo Corporation's Weeks Island complex. Plaintiff had a pre-existing back condition caused by a fall in 1977.
After plaintiff was struck he contends that he could no longer do strenuous work. At the time of trial he was employed at a Burger Chef Restaurant doing light janitorial work.
The trial court concluded that the accident which occurred in the salt mine aggravated plaintiff's pre-existing back condition and produced a partial disability.
Judgment was rendered in favor of the plaintiff and against the defendants, Dravo Corporation and Liberty Mutual Insurance Company, in solido, for reimbursement of medical expenses and partial disability compensation benefits under LSA-R.S. 23:1221(3). The defendants appealed and plaintiff answered seeking penalties and attorney's fees.
The principal issue on appeal is whether the accident sustained by the plaintiff in October 1978 produced the plaintiff's disability.
The medical and lay testimony is unanimous in declaring that plaintiff has a substantial disability. The crucial issue is whether this same disability was present before the accident in the salt mine or whether such accident aggravated plaintiff's back condition causing his disability.
Plaintiff is a 30 year old man with a 5th grade education. He is a functional illiterate and has worked as a manual laborer for the major part of his life. His previous back injury was caused by a fall from an attic onto some sawhorses in September 1977. He subsequently underwent a lumbar laminectomy in November 1977, at Charity Hospital in Lafayette. Thereafter he was never completely free of back trouble. He went to work for Dravo Corporation as a security guard on August 15, 1978. He transferred to the job of miner-laborer on September 4, 1978. The accident took place in October of that year. Plaintiff testified that his back pain was mild and intermittent before being struck by the salt. He stated that it only bothered him when he did heavy lifting, but he was still able to perform the duties of his job, including such heavy lifting.
Richard Hill, an operator for defendant, witnessed the accident and testified that plaintiff had always done his work without complaint prior to the accident. He further stated that after being struck by the salt, plaintiff couldn't perform his work. He said plaintiff appeared to be trying to do the work but just couldn't handle it.
Lennix Duhon, the union steward at the mine, testified that plaintiff showed him the bruise on his back. He stated that afterward plaintiff began complaining about back pain.
Edward Whitely, plaintiff's supervisor at the time of the accident, also stated that plaintiff was a good worker and had been able to do his job prior to the October 1978 accident.
Recognizing that the real issue is whether the accident in the salt mine caused plaintiff's disability, the trial court, in its reasons for judgment, reviewed the medical evidence relating to that question as follows:

"Dr. LaFleur, an orthopedic surgeon who has treated plaintiff on a regular basis since November 1979, is of the opinion that the contusion caused by the falling salt aggravated the back condition which had been existent prior to that accident.... He stated that the previous lumbar surgery predisposed plaintiff to being susceptible to further back injury, and that the salt accident aggravated the pre-existing condition....

*523 "Dr. Sutton is an orthopedic surgeon who examined plaintiff on one occasion prior to the salt mine accident and twice since the accident. In May 1978, Dr. Sutton was of the opinion that plaintiff had permanent physical impairment of 25 to 30 percent, and that he would have difficulty returning to his previous occupation as a painter.... When he examined plaintiff again in January 1979, he found no significant changes in plaintiff's objective symptoms.... In terms of plaintiff's ability to perform heavy work today, Dr. Sutton stated that he `really found no reason why there was any change, at least objectively'.... Dr. Crackower, a family doctor who referred plaintiff to Dr. Sutton for evaluation, stated that he is in agreement with Dr. Sutton's reports.... Defendant's contention that plaintiff's present partial disability resulted from the 1977 accident rather than the salt mine accident is based primarily on the opinions of Drs. Sutton and Crackower.

"Although Dr. Sutton found few objective changes to plaintiff's condition, he did admit that plaintiff's condition could have been aggravated by the salt mine accident. Dr. Sutton is of the opinion that plaintiff's prior accident and surgery resulted in a weakened back in terms of `more prone to injury or symptomatology.'... When asked his opinion as to the most probable source of plaintiff's problems today, Dr. Sutton stated: `Well, I believe it probably basically all stems from the falling through the attic accident. However, certainly his problem or symptomatology could have been aggravated by the block of salt falling on his back.' ... Although Dr. Sutton found few objective changes as a result of the mine accident, plaintiff's subjective symptomatology seemed to be somewhat worse than previously, and he seemed to be complaining of more discomfort.' ...

"This medical testimony must be considered in light of the factual situation of the case. The court found plaintiff to be an extremely credible witness. He testified that he was able to work in the salt mine without experiencing substantial pain, but that he now experiences severe pain when doing any strenuous work. Plaintiff's shift boss and two other Dravo employees corroborated plaintiff's testimony concerning his ability to perform the manual labor required of him in the mine."

For a period of several weeks prior to the accident plaintiff, as a miner, was engaged in strenuous physical labor. This was the work in which he was customarily engaged prior to the accident. He shoveled salt without problems and could do even the heaviest of the work such as lifting cross ties, although it caused him some pain. His testimony and that of his co-workers indicated that after the accident he could no longer perform his duties. None of the medical testimony contradicts plaintiff's claim that the blow to his back worsened his condition. The medical testimony supports that claim. It is apparent to us that after the accident plaintiff was no longer able to perform the "duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description by which he was fitted by education, training and experience."
Defendants' contention, that the trial court based its findings (that the accident in the mine aggravated plaintiff's condition) solely on subjective symptomatology which is not allowed under LSA-R.S. 23:1317, is also incorrect.
The statutory provisions of LSA-R.S. 23:1317 reads, in part, as follows:

"... The Court shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself...." (Emphasis added.)

*524 The Louisiana Supreme Court has interpreted this provision in the case of Drummer v. Central Pecan Shell. Co., 366 So.2d 1333 (La.1978):
"Workmen's compensation payments may be made `for only such injuries as are proven by competent evidence, or [sic] which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself.' * * * La.R.S. 23:1317. In interpreting the statutory language this Court has indicated that `objective conditions or symptoms' have a broad meaning, including `symptoms of pain, and anguish, such as weakness, pallor,... sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition * * *.' Frantz v. Schroeder. 184 La. 945, 947, 168 So. 110, 111 (1936), (quoting with approval from Manning v. Pomerene. 101 Neb. 127, at 130, 162 N.W. 492 at 493 (1917), and this Court has consistently held that subjective results which are imputable to the original objective conditions are compensable under law. Tantillo v. Liberty Mutual Insurance Company. 315 So.2d 743 (La.1975); Frantz v. Schroeder. supra. Accordingly, the objective conditions or symptoms required by the statute are not limited to symptoms of an injury which can be seen or ascertained by touch. Moreover, there need not be a continued exhibition of objective symptoms to entitle the employee to compensation if the injury complained of is causally connected with the original accident. Tantillo v. Liberty Mutual Insurance Company, supra; Frantz v. Schroeder. supra; Vega v. Higgins Industries. 23 So.2d 661 (La.App. Orl. Cir. 1945)."

Defendants rely heavily on Dr. Sutton's testimony indicating that he found no objective changes in the condition of plaintiff's back between May 1978 and January 1979.
We find that the accident itself, witnessed by a co-worker, the large contusion and small scar left by the falling salt in the area of plaintiff's previous laminectomy, and the apparent inability of plaintiff to perform his work, coupled with the medical testimony that plaintiff's condition made him more susceptible to injury to this area of his back by such an accident, gives a sufficient basis of objective conditions upon which the trial court could find the aggravation of a pre-existing condition. Furthermore, Dr. Sutton testified that his examination revealed such objective findings as a slight limp, curvature of the spine, and the right gastroc muscle was smaller than the left gastroc muscle. The contention of defendants is without merit.
Defendants' final contention is that the trial court erred in applying an improper standard to the determination of whether there was a causal relationship between the plaintiff's disability and the October 1978 accident.
Defendants' counsel argues that the plaintiff must be symptom free before the aggravating accident in order to recover compensation for that accident as the cause of the resultant disability, citing the case of Duncan v. R. J. Reynolds, Inc., 305 So.2d 707 (La.App. 4th Cir. 1974), for this proposition. He apparently interprets this case to mean that the plaintiff must be free of pain relating to the prior existing condition. We disagree. In the Duncan case, where compensation was awarded, the court, speaking of the incident there at issue, stated:
"Its effect was to weaken plaintiff's back so that he could no longer carry on.... it changed plaintiff from one actually gainfully employed and able to engage in employment with only a tolerable degree of pain to a patient who has an intolerable degree of pain and was evidently unable to return to work after what was probably an aggravating incident."
Plaintiff also was suffering a tolerable degree of pain until he was struck by the falling piece of salt and that pain then increased to an intolerable level. The proper standard for determining whether an accident is the legal cause of the disability *525 is simply whether the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment. Allen v. Milk Haulers, Inc., 278 So.2d 871 (La.App. 1st Cir. 1973). Plaintiff has met this standard.
The trial court was therefore correct in finding that the incident in question aggravated plaintiff's pre-existing back condition. Under Louisiana law the employer takes the employee as he finds him and it is well settled that the aggravation of a pre-existing condition is fully compensable. Cadiere v. West Gibson Products Co., Inc., 364 So.2d 998 (La.1978); Mitchell v. Travelers Insurance Company, 136 So.2d 143 (La.App. 3rd Cir. 1961).
Plaintiff is therefore entitled to workmen's compensation as awarded by the trial court.
The trial court also correctly found that, considering the circumstances of this case, the defendants were not arbitrary or capricious in refusing to pay compensation benefits. Plaintiff's request for penalties and attorney's fees is denied.
For the above reasons the judgment of the trial court is affirmed. All costs are assessed to defendants-appellants.
AFFIRMED.