673 So.2d 1043 (1995)
Earlyn CARRIER, Jr., Plaintiff-Appellant,
v.
DEBARGE'S COLLEGE JUNCTION, Defendant-Appellee.
No. 95-18.
Court of Appeal of Louisiana, Third Circuit.
September 27, 1995.
As Clarified on Rehearing January 24, 1996.
Writ Denied April 8, 1996.
*1045 Michael W. Robinson, Eunice, for Earlyn Carrier, Jr.
Kim Purdy Thomas, Dalton Roberts Ross, Shreveport, for Debarge's College Junction.
Before LABORDE, YELVERTON, KNOLL, WOODARD and AMY, JJ.
WOODARD, Judge.
This appeal arises from the denial of plaintiff's claim for workers' compensation benefits.

FACTS
Plaintiff, Earlyn Carrier, Jr., alleges that he injured his neck on April 13, 1993 as he stacked sacks of crawfish during the course of his employment for defendant, Debarge's College Junction (DCJ). He continued to work until April 26, 1993, despite increasing pain in his neck, when he informed one of DCJ's owners, Jason Debarge, that he could no longer work. Debarge refused to file an accident report. On July 12, 1993, Carrier filed a claim for workers' compensation benefits, but the hearing officer rendered judgment in favor of DCJ, finding that Carrier had failed to prove by a preponderance of the evidence that he had suffered a work-related injury. Carrier now appeals and requests statutory penalties and attorney's fees.

LAW
I. INJURY
The hearing officer found that Carrier had failed to prove that a work-related injury had occurred because Carrier's testimony to that effect was insufficiently corroborated by other evidence and refuted by Debarge's testimony.
An employee seeking workers' compensation benefits must establish by a preponderance of the evidence that he has suffered an injury as a result of an accident arising out of and in the course of his employment. La.R.S. 23:1031; Bruno v. Harbert Intern., Inc., 593 So.2d 357 (La.1992). A worker's testimony alone may establish a work-related accident if (1) no other evidence casts serious doubt on his version of the incident and (2) his testimony is corroborated by the circumstances following the alleged accident. Id. Corroboration may be provided by co-workers, spouses, friends, or medical *1046 evidence. Id. The evidence must be viewed in the light most favorable to the injured employee, and any doubts concerning credibility should be resolved in favor of the injured employee. Coley v. Wilson Oil Company, Inc., 620 So.2d 445 (La.App. 3 Cir. 1993).
The hearing officer appeared to attach significance to the fact that "no one appeared on Carrier's behalf to support his version of the facts," despite his allegation that he told Liz Carrier, his sister and DCJ's manager, that he was injured on the day after the work accident allegedly occurred. However, an employee's failure to summon a co-employee creates no presumption that the testimony would have been unfavorable to the employee when the co-employee was equally available to both parties. Shelvin v. Waste Management, Inc., 580 So.2d 1022 (La.App. 3 Cir.1991). Liz Carrier continues to work for DCJ, and consequently, it is clear that she was available to DCJ, as well as to Carrier, so that no conclusion may be drawn from her failure to testify. The hearing officer erred to the extent that she relied on Liz Carrier's absence to support her conclusion that Carrier did not suffer a work-related injury.
The hearing officer also found that Debarge's testimony refuted Carrier's claims that he had to raise sacks of crawfish over his head and that he had told Debarge that he had been injured on the job. However, Debarge's testimony, noted by the hearing officer to be "self-serving and sometimes inconsistent," contradicts Carrier's testimony only as to the precise day on which Carrier informed Debarge that he had been injured in a work-related accident. Carrier never stated that he had to lift sacks of crawfish "over his head," but only that he sometimes had to lift them to the level of his chest or shoulders, which Dr. R. Dale Bernauer, an orthopedic surgeon, testified could be sufficient to cause the type of injury that Carrier has suffered. Thus, Debarge's testimony in this respect does not "refute" anything stated by Carrier. Moreover, the precise day on which Carrier informed Debarge is of little probative value in this case, because in any event Debarge acknowledges that Carrier did so on April 26, 1993, which is 13 days after the alleged injury. A worker's delay in reporting an injury does not necessarily provide any basis for discounting his testimony regarding a work-related accident, particularly when the delay is of a short duration, such as two weeks. Bruno, 593 So.2d 357.
Debarge's testimony was particularly inconsistent regarding the date on which Carrier informed him that he was injured. Debarge repeatedly denied that Carrier told him that he had been injured on the job, but finally admitted that Carrier had asked him on Carrier's last day with DCJ, April 26, 1993, to notify his workers' compensation insurer because he had hurt his neck at work. Additionally, Debarge "recalled" that Carrier informed him that he was visiting a chiropractor, Dr. Joe Turk, two months before he told Debarge that he could no longer work. He says that he refused to fill out an accident report at that time because the accident had occurred two months earlier. However, Dr. Turk's records clearly show that Carrier's first visit to him for treatment for his neck was on April 21, a period of only five days before he spoke to Debarge about his injuries. Thus, Debarge's testimony was so internally inconsistent that it should have been assigned little or no weight, Bruno, 593 So.2d 357, and it is clear that the hearing officer erred in finding that this testimony cast serious doubt on Carrier's claim that he was injured in a work-related accident.
Finally, the hearing officer discounted the corroborative value of the report filed by Dr. Turk, because it was filled out on July 8, 1993, 2½ months after the initial examination on April 21, 1993, and "No office notes, reports or testimony was presented to show that a contemporaneous history was taken of a work-related accident." However, there was absolutely no reason for the court to question whether the report was based on a contemporaneous history because DCJ made no such allegation and no other circumstance indicated that Dr. Turk had failed to take such a history. Dr. Turk's statement of charges clearly reveals that he examined Carrier and took x-rays of his cervical spine on April 21, 1993, regardless of the day on *1047 which he actually filled out the report, which is dated July 8, 1993. Thus, it is clear that the hearing officer erred in failing to consider this report as corroboration of Carrier's claim.
In his report, Dr. Turk notes that the "Patient felt like repetitive lifting of crawfish sacks either caused injury or definitely worsened condition." Carrier reported the same facts to Dr. Bernauer when he visited him on December 20, 1993, and to Dr. Bobby Deshotel, whom Carrier saw on December 3, 1993. Dr. Bernauer also testified that lifting heavy objects such as sacks of crawfish could cause cervical injuries, depending on the height to which they were lifted. Dr. Bernauer also believed that the injury was a strain, and that it resulted from a traumatic injury such as a lifting incident, rather than from repetitive motion. His examination was consistent with Carrier's allegation that he suffered a lifting accident in April 1993.
We note as further corroboration that Carrier suffered a work-related injury (1) his lack of prior injuries; (2) the consistency between the lifting type of manual labor that Carrier performed and the cervical injury that he has suffered, Richard v. Temple-Inland, 625 So.2d 335 (La.App. 3 Cir.1993); (3) the lack of evidence of any intervening cause of his injury; and (4) the timeliness of his report of injury, Bruno, 593 So.2d 357.
Thus, the hearing officer erred as a matter of law in finding that Carrier did not suffer a work-related injury, because his testimony is essentially uncontradicted and well-corroborated by medical evidence. Bruno, 593 So.2d 357. Consequently, we reverse the hearing officer's decision and find that Carrier suffered a work-related injury on April 13, 1993. The hearing officer did not reach the issue of disability, but the record before us is complete, and therefore we will decide this issue de novo.

II. DISABILITY
Entitlement to workers' compensation benefits is based on the claimant's ability or inability to earn wages. Mitchell v. Abbeville General Hospital, 93-1146 (La. App. 3 Cir. 4/6/94), 635 So.2d 540. An employee seeking temporary total disability (TTD) benefits must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment. La.R.S. 23:1221(1)(c). The new "clear and convincing" standard is a heavier burden of proof than the usual civil "preponderance of the evidence" standard, but it is less burdensome than the "beyond a reasonable doubt" standard of the criminal law. Bundren v. Affiliated Nursing Homes, Inc., No. 94-808 (La.App. 3 Cir. 2/1/95), 649 So.2d 1177. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence. Id.
The issue of disability presents a legal, rather than purely medical question, that must be determined through consideration of both lay and medical testimony. Bundren, 649 So.2d 1177. After reviewing the relevant facts in the record, which are set forth below, we find that Carrier has carried his burden of proof.
Carrier testified that he is unable to work as a result of severe pain in his head, neck, shoulders, and arms. This testimony is corroborated Dr. Turk's diagnosis, on the basis of a radiographic examination, that Carrier is suffering from acute cervical torticollis and radiculitis due to C4 subluxation. Additionally, an MRI taken on October 15, 1993 shows a diffuse disc bulge at the C6-7, which Dr. Bernauer testified was capable of causing significant pain and which he believes constitutes an objective finding that Carrier's complaints are genuine. Further, Dr. Bernauer explicitly stated that he had not released Carrier to work:
Q. In your report of February 10, 1994 you said his prognosis was guarded. Do you still feel his prognosis was guarded?
A. He's still having pain as of his last visit. It has not changed. I feel thatI don't feel that he's got an operative lesion. I think he needs further conservative treatment to try to get him over this.

*1048 Q. What sort of conservative treatment do you recommend?
A. I think he's going to need a combination of an exercise program and traction, and possibly a little more physical therapy.
* * * * * *
Q. As of right now, you haven't released Mr. Carrier to return to work, have you?
A. No, I haven't.
Q. At this moment, do you feel that he can return to work?
A. As of his last visit, he was not ready to return to work.
Q. Before he can return to work, you need to see him again and go through this conservative treatment of exercise, traction and possibly more physical therapy, right?
A. Right.
* * * * * *
Q. As of right now, he hasn't been released to work and he still needs some more treatment, right?
A. Correct.
There is no evidence in the record that Carrier has finished such a program. Even DCJ's vocational rehabilitation counselor, Donny Rue, testified that he considered Carrier to be unemployable until Dr. Bernauer releases him to work. Thus, the uncontradicted testimonies of Carrier and Dr. Bernauer indicate that he is totally disabled from work until he completes the prescribed rehabilitation program. Consequently, we must award him TTD benefits.
Carrier was employed only during the height of the crawfish season, and he was injured during his first year of such employment. Therefore, as a seasonal employee, his weekly TTD benefits are 66 2/3% of 1/52 of the annual income of other employees working in a similar environment for similar employers. La.R.S. 23:1021(10)(v)(bb). Carrier's successor earned $2,486.40 in the year after Carrier left DCJ, so he is entitled to TTD benefits at the rate of $31.88 per week, from April 26, 1993, together with legal interest on the amount already due, until he successfully completes the rehabilitation program. See La.R.S. 23:1221(1)(a). However, this amount may be less than the minimum weekly compensation benefit provided by law. La.R.S. 23:1202. The record does not contain any evidence as to that rate on April 13, 1993. We must, therefore, remand this case for the trial court's determination of the plaintiff's weekly compensation rate. Melder v. Century Telephone Enterprises, Inc., 413 So.2d 1325 (La.App. 3 Cir.1982).
Although Carrier is not currently entitled to an award for his future medical expenses, he retains the right to claim such expenses when they are incurred. Frazier v. Conagra, Inc., 552 So.2d 536 (La.App. 2 Cir.1989), writ denied, 559 So.2d 124 (La.1990).
III. PENALTIES AND ATTORNEY'S FEES
An employer who fails to commence payment of compensation within 30 days after benefits are due is penalized 12% of the outstanding benefits, unless the employee's claim has been reasonably controverted. La.R.S. 23:1201(E). Failure to pay within 60 days after receipt of a claim due subjects the employer to payment of all reasonable attorney's fees for the prosecution and collection of the amount due when the employer's omission is arbitrary, capricious, or without probable cause. La.R.S. 23:1201.2.
Debarge testified that Carrier informed him that he believed his injury was work-related on his last day at DCJ, April 26, 1993. Debarge refused to file a workers' compensation claim because he believed that his insurer would refuse the claim because too much time had elapsed since the date of the alleged accident. Debarge apparently failed to conduct any further inquiry into the cause or severity of Carrier's injury. An employer who fails to investigate a workers' compensation claim subjects itself to statutory penalties and attorney's fees; there must be a real or substantial issue to deny benefits to a disabled employee. Nelson v. Roadway Express, Inc., 588 So.2d 350 (La.1991). Consequently, we award Carrier attorney's fees in the amount of $8,000.00, Edwards v. Delta Timber Co., 94-725 (La.App. 3 Cir. 12/7/94), *1049 647 So.2d 548, and penalties of 12% of the past due TTD benefits. La.R.S. 23:1201(E).

CONCLUSION
For the foregoing reasons, the judgment of the hearing office is reversed and set aside. It is ordered, adjudged, and decreed that Earlyn Carrier, Jr. is entitled to: (1) temporary total disability benefits, from April 26, 1993 until he successfully completes a recommended rehabilitation program, in an amount to be determined by the trial court on remand; (2) an award of attorney's fees of $8,000.00; and (3) statutory penalties of 12% of the total amount of past due temporary total disability benefits. Finally, it is ordered that all costs at the trial level and on appeal be borne by Debarge's College Junction.
REVERSED AND REMANDED.
AMY, J., dissents.
Before YELVERTON, KNOLL, WOODARD, AMY and LABORDE [*], JJ.

ON REHEARING
WOODARD, Judge.
We have granted the limited rehearing to clarify our earlier opinion on the issues of medical bills and statutory penalties. Our former decree is amended to read as follows: It is ordered, adjudged, and decreed that Earlyn Carrier, Jr., is entitled to (1) all past medical bills, as well as future medical bills as they are incurred; and (2) statutory penalties of 12% of the total amount of past due temporary total disability benefits or $50.00 per calendar day, whichever is greater, not to exceed $2,000.00. Finally, it is ordered that all costs at the trial level and on appeal be borne by Debarge's College Junction.
In all other respects, our original decree is affirmed.
NOTES
[*] Judge P.J. Laborde, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.