# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-581

MARCUS STROTHER

VERSUS

CITY OF MARKSVILLE - POLICE DEPARTMENT

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF AVOYELLES, NO. 11-03914
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.

**Conery, J., concurs in part and dissents in part and assigns reasons.**

**AFFIRMED.**

**Christopher R. Philipp**
**Law Office of Christopher R. Philipp**
**Post Office Box 2369**
**Lafayette, Louisiana  70502-2369**
**(337) 235-9478**
**Counsel for Defendant/Appellant:**
     **City of Marksville – Police Department**

**Anthony F. Salario**
**Salario Law Firm, LLC**
**Post Office Box 503**
**Marksville, Louisiana  71351**
**(318) 240-7123**
**Counsel for Plaintiff/Appellee:**
     **Marcus Strother**

**KEATY, Judge.**

Employer appeals a judgment rendered by the workers' compensation judge (WCJ) in favor of the claimant, its former employee. We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts in this matter are not in dispute. Marcus Anthony Strother applied for a job with the City of Marksville Police Department (the City) on October 25, 2010. According to the minutes from a December 14, 2010 special meeting of the Mayor and Board of Aldermen, Strother was appointed as a patrol officer for the City. He submitted to a pre-employment physical with family practice physician Dr. Vincent Goux, during which he disclosed that he had previously undergone a lumbar facet fusion. On February 15, 2011, Strother injured his lower back while boxing during a training exercise at the police academy, and he sought treatment at the Avoyelles Hospital Emergency Room. He continued to treat with his choice of physician, Dr. Bryan McCann, a family practitioner, until he was returned to full duty after an April 4, 2011 office visit. Thereafter, he returned to work at the police department where he was assigned to light duty/office work. The City terminated Strother, who was a probationary cadet, on May 11, 2011, after it learned that he had undergone a low-back facet fusion surgery as the result of an injury he incurred prior to his employment on the police force. Thereafter, the City did not provide Strother with any additional workers' compensation benefits.

Strother filed a Form 1008 Disputed Claim for Compensation against the City on May 26, 2011, alleging that he was discharged and his worker's compensation benefits were arbitrarily and capriciously terminated following his training injury. He sought penalties and attorney fees against the City for its termination of his indemnity benefits and its failure to approve medical treatment.

On January 17, 2012, Strother filed a motion to consolidate this matter with a 1008 he had filed against the State of Louisiana, Avoyelles Correctional Center (the ACC) involving an injury he sustained on May 26, 2009,[1] on the basis that both actions were related to the same injury. The WCJ signed an order consolidating the two matters on February 6, 2012.[2] We note, however, no copy of the 1008 Strother filed regarding his claims against the ACC appears in the record on appeal nor in the exhibits filed at the trial of this matter. According to Strother's trial testimony, he was injured on May 26, 2009, when a horse that he was riding in conjunction with his duties as a field officer at the ACC, a state prison, got spooked and bucked, causing his back to "pop." He was treated by Dr. Lawrence Drerup, a neurosurgeon, and eventually underwent a bilateral facet fusion at L3-4 and L4-5 on May 26, 2010. Dr. Drerup released Strother to return to work on October 12, 2010, at which time Strother had complaints of intermittent mild low-back pain/achiness.

The City filed a supplemental and amending answer and cross claim on May 22, 2013, alleging that in the event Strother was found to be entitled to any additional workers' compensation disability benefits and medical treatment as a result of the February 15, 2011 accident, the City would be entitled to indemnity and/or contribution from the ACC and to a credit for the disability benefits paid to Strother by the ACC in settlement of his claim against it due to the solidary liability between them as Strother's employers. On July 1, 2013, Strother and the ACC filed and the WCJ signed an order approving a joint petition to compromise

---

[1] According to the motion to consolidate, Strother's claim against the ACC was filed in District 2 of the Office of Workers' Compensation and was assigned Docket Number 11-3913.

[2] While a signed order of consolidation appears in the record on appeal, neither the record on appeal nor the exhibits filed at the trial of this matter contain the 1008 nor any other pleadings regarding the claim Strother filed against the ACC.

wherein Strother agreed to accept $25,000.00 to settle his claims arising out of his May 26, 2009 injury while employed at the ACC. Strother's rights to proceed against the City were specifically reserved in the settlement order.

Although it had filed a pre-trial statement before this matter was consolidated with the ACC matter, the City filed a second supplemental pre-trial statement wherein it stated that an issue to be litigated at trial was whether any additional benefits found to be owed to Strother by it should be reduced by Strother's settlement with the ACC because of their solidarity liability to him. Strother then filed a supplemental pre-trial memorandum wherein he claimed that the medical evidence proved that the injury he suffered while working for the City was "a separate and distinct injury from his prior injury" such that "the burden for payment of [any additional] benefits should be found to fall squarely on the City."

Trial took place on November 27, 2013, after which the matter was taken under advisement and the WCJ requested that the parties file post-trial briefs. Oral judgment was rendered on February 18, 2014, and a written judgment was signed on March 13, 2014, in favor of Strother and against the City, ordering the City to:

1) reinstate payment of Temporary Total Disability Benefits (TTDs) to Strother retroactive from the date of his appointment with Dr. Lawrence Drerup on April 10, 2012;

2) pay all unpaid medical expenses incurred on behalf of Strother, including but not limited to those incurred with Dr. McCann on December 7, 2011, January 30, 2012, and March 26, 2012, along with any other related medical expenses;

3) reinstate payment of Strother's medical benefits, including the physical therapy prescribed by Dr. Drerup and any other reasonable and necessary medical treatment prescribed by Strother's treating physicians;

4) pay penalties in the amount of $2,000.00 for failure to reinstate TTDs after being provided sufficient proof;

3

5) pay penalties in the amount of $2,000.00 for failure to reinstate medical benefits after being provided sufficient proof; and

6) pay the Salario Law Firm $8,500.00 in attorney fees.

The City now appeals asserting that the WCJ committed: 1) manifest error in awarding Strother TTDs;[3] and 2) legal error in failing to rule on the issue of solidary liability of the ACC and the effect of ACC's settlement as it relates to the City's liability to Strother.

## DISCUSSION

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corrections,* 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State,* 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [fact-finder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La.1990).

*Foster v. Rabalais Masonry, Inc.,* 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied,* 02-1164 (La. 6/14/02), 818 So.2d 784.

"Under Louisiana law, the employer takes the employee as he finds him, and it is well-settled that the aggravation of a pre-existing condition is fully compensable." *Rougeou v. St. Francis Cabrini Hosp.*, 12-854, p. 11 (La.App. 3 Cir. 2/6/13), 107 So.3d 851, 859. "Causation is not necessarily a medical conclusion, and the ultimate determination as to whether a plaintiff has proved the

---

[3] We note that the City has not specifically assigned as error the WCJ's award of penalties and attorney fees. Instead, the City simply asserted that if this court were to reverse the WCJ's award of TTDs, we should also reverse that portion of the judgment awarding Strother "penalties and attorney fees for failing to pay disability benefits."

4

causation of his/her disability is made by the courts and not by medical experts."

*Id.*

> An insurer is required to make a reasonable effort to ascertain an employee's exact medical condition before benefits are terminated. If, subsequent to an initial optimistic report, an insurer receives medical information indicating continuing disability, the insurer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment or discontinuance of benefits without probable cause.

*LeBlanc v. Excel Auto Parts*, 11-58, p. 3 (La.App. 3 Cir. 6/1/11), 67 So.3d 687, 689.

### *Strother's Entitlement to TTDs*

> In order to receive temporary total disability benefits, an employee must prove that he is unable to physically engage in any employment or self-employment as a result of his work-related injury. La.R.S. 23:1221(1)(c). The employee's burden of proof is by clear and convincing evidence; thus, [claimant] must prove that his disability is highly probable or much more probable than not. *Carrier v. Debarge's Coll. Junction,* 95-18 (La.App. 3 Cir. 9/27/95), 673 So.2d 1043, *writ denied,* 96-0472 (La.4/8/96), 671 So.2d 337.

> However, "[w]hether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ." *City of Shreveport v. Casciola*, 43,132, p. 8 (La.App. 2 Cir. 3/26/08), 980 So.2d 203, 209. The WCJ's findings of fact are subject to the manifest error standard of review. *Id.*

*Burkett v. LFI Fort Pierce, Inc.*, 10-1478, p. 6 (La.App. 3 Cir. 5/4/11), 63 So.3d 365, 370, *writ denied*, 11-1129 (La. 9/16/11), 69 So.3d 1148 (quoting *Funderburk v. Nabors Drilling USA, Inc.*, 05-1119, pp. 6-7 (La.App. 3 Cir. 4/26/06), 930 So.2d 1058, 1062, *writ denied*, 06-1252 (La. 9/15/06), 936 So.2d 1275).

At the trial of this matter, Strother testified that he is twenty-five years old and is married to Crystal Strother, who worked as a manager at Wal-Mart. They are the parents of two children, ages five and thirteen, and they live in a mobile home on property owned by Crystal's father. Strother stated that he quit school

during the tenth grade in order to get a GED and begin working. According to Strother, several weeks after he was fired by the City, he began working for his friend, Isaac Rabalais, who owns a construction company, in order to supplement his family's income. He stated that he was only able to work for about two or three weeks before he had to quit due to increasing back pain. Thereafter, he returned to Dr. McCann and received several shots and some pain medication. He also sought additional treatment from Dr. Drerup, whom he told about his boxing injury at the police academy. Dr. Drerup gave him some cream to put on his back and recommended that he do physical therapy. Strother explained that because the City would not pay for his doctor visits or physical therapy, he was not able to afford the recommended physical therapy.

Strother testified that he continues to have pressure in the middle of his low back that increases with almost all activity. He stated that he takes care of his children and the house while his wife works and that he tries to help maintain the property where his family lives. He also hunts and fishes whenever possible.

Crystal testified that she currently works the day shift at Wal-Mart from 7:00 a.m. to 4:00 p.m. Because she has to leave before the children go to school, her husband is responsible for getting them to and from the school bus. She stated that he also washed the family's clothes and had supper ready when she returned from work. According to Crystal, her husband had not been able to work since helping his friend Isaac in his construction business, and his complaints of back pain or pressure have remained constant since he stopped working for the City. Finally, she stated that her husband wanted to get help for his back pain so that he could return work and/or school.

Shannon Melerine, the City's risk management adjustor, testified that after Dr. McCann discharged Strother and released him to return to work on April 4, 2011, with an indication that he had returned to his pre-accident condition, she never authorized payment of any additional benefits for Strother because she believed that any exacerbation of his pre-existing condition had dissipated. As the WCJ noted in its oral judgment, however, Strother was still experiencing pain when he was discharged from Dr. McCann, and he sought additional treatment from both Dr. McCann and Dr. Drerup, explaining to both physicians that his complaints of back pain and pressure stemmed from the boxing accident.

According to his October 17, 2012 deposition, Dr. McCann treated Strother on December 7, 2011, at which time Strother complained that his low back "continued to hurt daily" and that the pain got "worse with cold weather." Strother further informed Dr. McCann that he would have returned to his office sooner but he had experienced difficulty with his workers' compensation coverage. Dr. McCann gave Strother an anti-inflammatory injection and refilled his prescriptions for pain medication and muscle relaxers. In his deposition, Dr. McCann stated his belief that the cause of Strother's current complaints was the boxing accident for which he had previously treated him. Dr. Drerup stated in his September 7, 2012 deposition that when he saw Strother in April 2012, Strother's fusion appeared to be "solid." Moreover, Dr. Drerup opined that Strother's complaints of low and mid-back pressure were unrelated to the horse riding accident that necessitated his May 2010 back surgery. He prescribed an anti-inflammatory cream for Strother to apply to his back. In addition, Dr. Drerup believed that Strother should complete physical therapy before attempting to return

to any kind of employment, which treatment, he believed, could prevent Strother's back condition from becoming chronic and enable him to return to work.

In light of the uncontradicted testimony and medical evidence, we find no manifest error in the WCJ's finding that, at the time of trial, Strother was unable to work as a result of the February 15, 2011 accident that he suffered during the boxing training exercise while employed by the City. Accordingly, we find no merit to the City's assertion that the WCJ erred in awarding Strother TTDs.

### *Solidary Liability of the ACC*

In *Abshire v. Dravo,* 396 So.2d 521, 524-25 (La.App. 3 Cir.1981), this court found in favor of the claimant, Abshire, after he suffered aggravation of a pre-existing injury and stated as follows:

> Plaintiff also was suffering a tolerable degree of pain until he was struck by the falling piece of salt and that pain then increased to an intolerable level. The proper standard for determining whether an accident is the legal cause of the disability is simply whether the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment. *Allen v. Milk Haulers, Inc.,* 278 So.2d 871 (La.App. 1st Cir.1973). Plaintiff has met this standard.
>
> . . . .
>
> The WCJ's determination that Rougeou was credible, coupled with Dr. Nanda's deposition testimony, meets the required preponderance of the evidence standard. Causation is not necessarily a medical conclusion, and the ultimate determination as to whether a plaintiff has proved the causation of his/her disability is made by the courts and not by medical experts. *Bush v. Avoyelles Progress Action Comm.,* 07-685 (La.App 3 Cir. 10/31/07), 970 So.2d 63; *Martin v. H.B. Zachry Co.,* 424 So.2d 1002 (La.1982). Rougeou's claim for the recommended surgery should have been granted by Cabrini.
>
> Under Louisiana law, the employer takes the employee as he finds him, and it is well-settled that the aggravation of a pre-existing condition is fully compensable. *Abshire,* 396 So.2d 521.

*Rougeou v. St. Francis Cabrini Hosp.*, 12-854, pp. 10-11 (La. App. 3 Cir. 2/6/13), 107 So. 3d 851, 859.

The WCJ concluded that Strother met his burden of proving that he was injured as a result of the boxing exercise that he suffered in conjunction with his training at the police academy. The WCJ further concluded that while the City claimed that Strother's complaints were attributable to the injury that he suffered while employed by the ACC prior to his employment with the City, the City failed to produce any medical evidence to support that claim. Instead, the WCJ noted that the medical evidence uniformly supports Strother's claim that his current "ongoing complaints are the aggravation he suffered in the training incident during the boxing incident."

After a thorough review of the testimony and evidence, we conclude that the WCJ did not err in rendering judgment only against the City, as the boxing accident that he suffered while employed there resulted in an aggravation of his prior back condition that left him temporarily totally disabled from returning to work. The WCJ did not fail to rule on the issue of solidary liability between the City and the ACC. Instead, the WCJ determined that while Strother's current complaints may be the result of an aggravation of his prior back condition, they were caused by his February 2011 boxing accident and were not simply the same complaints that he had following his May 2009 accident while employed by the ACC. As a result, the WCJ found that the City was solely responsible for paying the workers' compensation benefits currently owed to Strother. The City's second assignment of error lacks merit.

**DECREE**

For the foregoing reasons, the judgment of the WCJ in favor of Marcus Anthony Strother and against the City of Marksville Police Department is affirmed.

All costs of this appeal are assessed against the City of Marksville Police Department.

**AFFIRMED.**

**MARCUS STROTHER**

**V.**

**CITY OF MARKSVILLE – POLICE DEPARTMENT**

**CONERY, J., concurs in part and dissents in part.**

I concur with the majority's decision to affirm the award of temporary total disability benefits (TTDs) and medical expenses. Though I do not necessarily agree with the WCJ's and the majority's decision on this issue and may have decided differently as the trier of fact, I recognize that the WCJ has vast discretion to make credibility decisions. Entitlement to TTDs and medical expenses based on the claimant's alleged "boxing injury" while in the training academy for the City of Marksville - Police Department (Marksville Police) was hotly contested by Defendant. However, there was sufficient evidence in the record to support the WCJ's conclusions that Mr. Strother had proven his entitlement to TTDs and medical expenses based on the manifest error rule. Nevertheless, I feel the WCJ was manifestly erroneous in the decision to award penalties and attorney fees.

Procedurally, the majority feels that this issue was not sufficiently preserved for appeal, as no separate assignment of error was filed, briefed, or argued separately on appeal. I disagree. Defendant raised and argued the issue in the trial court. It is axiomatic that no penalties and attorney fees can be awarded unless TTDs and/or medical expenses are awarded.

Indeed, the conclusion to Defendant's brief states, "The Trial Court was

manifestly erroneous when it awarded temporary total disability benefits to the plaintiff. That part of the Court's Judgment should be reversed, along with the award of penalties and attorney fees for failing to pay disability benefits." The same arguments and facts that Defendant cites with respect to Mr. Strother's entitlement to TTDs and medical expenses apply to the issue of penalties and attorney fees. Defendant clearly asked for relief from our court on this issue.

Even assuming the majority is correct in its assessment that procedurally, the issues of penalties and attorney fees was not properly raised on appeal due to the lack of a specific assignment of error, a position with which I disagree under the facts of this case, I would nevertheless find that there is sufficient authority for us to consider these issues on appeal in the interest of justice. *See Wooley v. Lucksinger*, 11-571 (La. 4/1/11), 61 So.3d 507; Uniform Rule—Courts of Appeal, Rule 1–3.

I recognize that the WCJ's decision to award penalties and attorney fees was based on his assessment that after benefits were discontinued on the basis of a medical report issued on April 5, 2011, indicating return to work status by the claimant's treating physician for the "boxing injury," Dr. McCann, receipt of subsequent information from Dr. Dreup a year later on April 12, 2012 indicated that Mr. Strother was still suffering from low back complaints. However, those complaints were identical to that for which Dr. Dreup was treating him based on the 2009 incident at Avoyelles Correctional. Mr. Strother did not give a history to Dr. Dreup that he re-injured his back while boxing at the Marksville Police Academy, and Dr. Dreup's notes simply mention a "sporting injury" without further description. Dr. Dreup opined that Mr. Storther was in need of physical therapy and that report and medical bills were also sent to Avoyelles Correctional

and its carrier with a demand for payment and reinstatement of benefits. As indicated, a claim for benefits and medical expenses had been filed against Avoyelles Correctional and its carrier which was consolidated with the claim against Marksville Police and its carrier. Avoyelles Correctional and its carrier paid Mr. Strother and settled its claim for $25,000 right before trial.

No comment was made by Dr. Dreup concerning Mr. Strother's ability to work in the reports sent to Marksville Police and its carrier. Once it received Dr. Dreup's report, the WCJ felt that Marksville Police and its worker's compensation carrier were then required to reevaluate its position and, if necessary, seek additional medical evaluations to clarify causation and work ability. Since the employer/carrier did not do so, the WCJ awarded penalties and attorney fees.

In this case, however, the employer/carrier had reason to controvert both disability and causation based on the conflicting, somewhat confusing, and deficient medical reports, especially as to causation and work status. As previously indicated, on April 5, 2011, the employee had been fully released by his treating physician, Dr. McCann, after his complaints from the "boxing injury" had fully resolved. In fact, Mr. Strother told Dr. McCann at the April 5, 2011 visit that his back pain was "the same as before the accident." Mr. Strother did not seek medical attention for his low back until eight months later on December 7, 2011, after he had done some additional construction work at a friend's company. Mr. Strother's counsel argued that Mr. Strother had sought permission to be re-evaluated in the interim, but had been denied. Assuming the validity of that claim, it does not change the result, as the re-examinations conducted by Dr. McCann from December 7, 2011 through March 26, 2012 were all completely normal. Mr. Strother had no objective or subjective findings. Once again, Dr. McCann

discharged Mr. Strother on March 26, 2012 with no work restrictions mentioned.

Mr. Strother had described his back symptoms to Dr. McCann as "it's like pressure," and his pain was exacerbated by the cold weather. These are the identical symptoms he described to his then treating physician, Dr. Dreup, from his previous injury at Avoyelles Correctional, prior to the "boxing injury" at the Marksville police training academy. Marksville Police and its workers compensation carrier had every reason to believe that Mr. Strother's complaints to Dr, Dreup were related to the previous injury at Avoyelles Correctional.

Because of the preexisting injury and Mr. Strother's continuing complaints of feeling "pressure" in his back that were allegedly caused by the 2009 injury at Avoyelles Correctional, and based on Dr. McCann's complete discharge on April 5, 2011 with no further symptoms from the "boxing injury," with follow up a year later on March 26, 2012 still showing no findings, objective or subjective and no work restrictions, I find that the Marksville Police and its carrier had sufficient factual and legal justification to reasonably controvert this claim within the meaning of La.R.S. 23:1201.

A claim is "reasonably controverted" when the employer has some valid reason or evidence or a "bona-fide dispute" on which to base his denial of benefits. *See Williams v. Pilgrim's Pride Corp.*, 11-59 (La.App. 3 Cir. 6/1/11), 68 So.3d 616, *writs denied*, 11-1793 (La. 10/21/11), 73 So.3d 384 and 11-1794 (La. 10/21/11), 73 So.3d 384. An employer should not be penalized for bringing a close factual or legal issue to the court for resolution. *See Williams*, 68 So.3d 616; *Dietz v. Lowe's Home Centers, Inc.*, 14-401 (La.App. 3 Cir. 11/5/14), 151 So.3d 990; *Sinegal v. Lafayette Parish Sheriff's Office*, 13-1437 (La.App. 3 Cir. 5/7/14), 139 So.3d 630.

Therefore, I would reverse the WCJ's decision to award penalties and attorney fees under the facts of this case. I agree with the majority to assess all costs to Defendant, but do not agree to assess any attorney fees on appeal.