KEATY, Judge.
| Employer appeals a judgment rendered by the workers’ compensation judge (WCJ) in favor of the claimant, its former employee. We affirm.
FACTS AND PROCEDURAL HISTORY
The facts in this matter are not in dispute. Marcus Anthony Strother applied for a job with the City of Marksville Police Department (the City) on October 25, 2010. According to the minutes from a December 14, 2010 special meeting of the Mayor and Board of Aldermen, Strother was appointed as a patrol officer for the City. He submitted to>a pre-employment physical with family practice physician Dr. Vincent Goux, during which he disclosed that he had previously undergone a lumbar facet fusion. On February 15, 2011, Strother injured his lower back while boxing during a training exercise at the police academy, and he sought treatment at the Avoyelles Hospital Emergency Room. He continued to treat with his choice of physician, Dr. Bryan McCann, a family practitioner, until he was returned to full duty after an April 4, 2011 office visit. Thereafter, he returned to work at the police department where he was assigned to light duty/office work. The City terminated Strother, who was a probationary cadet, on May 11, 2011, after it learned that he had undergone a low-back facet fusion surgery as the result of an injury he incurred prior to his employment on the police force. Thereafter, the City did not provide Strother with any additional workers’ compensation benefits.
Strother filed a Form 1008 Disputed Claim for Compensation against the City on May 26, 2011, alleging that he was discharged and his worker’s compensation benefits were arbitrarily and capriciously terminated following his training injury. He sought penalties and attorney fees against the City for its termination of his indemnity benefits and its failure to approve medical treatment.
li>On January 17, 2012, Strother filed a motion to consolidate this matter with a 1008 he had filed against the State of Louisiana, Avoyelles Correctional Center (the ACC) involving an injury he sustained on May 26, 2009,[1] on the basis that both actions were related to the same injury. The WCJ signed an order consolidating the two matters on February 6, 2012.[2] We note, however, no copy of the 1008 Strother filed regarding his claims against the ACC appears in the record on appeal nor in the exhibits filed at the trial of this matter. According to Strother’s trial testimony, he was injured on May 26, 2009, when a horse that he was riding in conjunction with his duties as a field officer at the ACC, a state prison, got spooked and bucked, causing his back to “pop.” He was treated by Dr. Lawrence Drerup, a neurosurgeon, and eventually underwent a bilateral facet fusion at L3-4 and L4-5 on May 26, 2010. Dr. Drerup released Strother to return to work on October 12, 2010, at which time Strother had complaints of intermittent mild low-back pain/aehiness.
The City filed a supplemental and amending answer and cross claim on May 22, 2013, alleging that in the event Stroth *1082 er was found to be entitled to any additional workers’ compensation disability benefits and medical treatment as a result of the February 15, 2011 accident, the City would be entitled to indemnity and/or contribution from the ACC and to a credit for the disability benefits paid to Strother by the ACC in settlement of his claim against it due to the solidary liability between them as Strother’s employers. On July 1, 2013, Strother and the ACC filed and the WCJ signed an order approving a joint petition to compromise |3wherein Strother agreed to accept $25,000.00 to settle his claims arising out of his' May 26, 2009 injury while employed at the ACC. Strother’s rights to proceed against the City were specifically reserved in the settlement order.
Although it had filed a pre-trial statement before this matter was consolidated with the ACC matter, the City filed a second supplemental pre-trial statement wherein it stated that an issue to be litigated at trial was whether any additional benefits found to be owed to Strother by it should be reduced by Strother’s settlement with the ACC because of their solidarity liability to him. Strother then filed a supplemental pre-trial memorandum wherein he claimed that the medical evidence proved that the injury he suffered while working for the City was “a separate and distinct injury from his prior injury” such that “the burden for payment of [any additional] benefits should be found to fall squarely on the City.”
Trial took place on November 27, 2013, after which the matter was taken under advisement and the WCJ requested that the parties file post-trial briefs. Oral judgment was rendered on February 18, 2014, and a written judgment was signed on March 13, 2014, in favor of Strother and against the City, ordering the City to:
1) reinstate payment of Temporary Total Disability Benefits (TTDs) to Strother retroactive from the date of his appointment with Dr. Lawrence Drerup on April 10, 2012;
2) pay all unpaid medical expenses incurred on behalf of Strother, including but not limited to those incurred with Dr. McCann on December 7, 2011, January 30, 2012, and March 26, 2012, along with any other related medical expenses;
3) reinstate payment of Strother’s medical benefits, including the physical therapy prescribed by Dr. Drerup and any other reasonable and necessary medical treatment prescribed by Strother’s treating physicians;
4) pay penalties in the amount of $2,000.00 for failure to reinstate TTDs after being provided sufficient proof;
|45) pay penalties in the amount of $2,000.00 for failure to reinstate medical benefits after being provided sufficient proof; and
6) pay the Salario Law Firm $8,500.00 in attorney fees.
The City now appeals asserting that the WCJ committed: 1) manifest error in awarding Strother TTDs;[3] and 2) legal error in failing to rule on the issue of solidary liability of the ACC and the effect of ACC’s settlement as it relates to the City’s liability to Strother.
DISCUSSION
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of ap *1083 pellate review. Smith v. Louisiana Dep’t of Corrections, 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Id. Thus, “if the [fact-finder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).
Foster v. Rabalais Masonry, Inc., 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, writ denied, 02-1164 (La.6/14/02), 818 So.2d 784.
“Under Louisiana law, the employer takes the employee as he finds him, and it is well-settled that the aggravation of a pre-existing condition is fully compen-sable.” Rougeou v. St. Francis Cabrini Hosp., 12-854, p. 11 (La.App. 3 Cir. 2/6/13), 107 So.3d 851, 859. “Causation is not necessarily a medical conclusion, and the ultimate determination as to whether a plaintiff has proved the |scausation of his/ her disability is made by the courts and not by medical experts.” Id.
An insurer is required to make a reasonable effort to ascertain an employee’s exact medical condition before benefits are terminated. If, subsequent to an initial optimistic report, an insurer receives medical information indicating continuing disability, the insurer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment or discontinuance of benefits without probable cause.
LeBlanc v. Excel Auto Parts, 11-58, p. 3 (La.App. 3 Cir. 6/1/11), 67 So.3d 687, 689.

Strother’s Entitlement to TTDs

In order to receive temporary total disability benefits, an employee must prove that he is unable to physically engage in any employment or self-employment as a result of his work-related injury. La.R.S. 23:1221(l)(c). The employee’s burden of proof is by clear and convincing evidence; thus, [claimant] must prove that his disability is highly probable or much more probable than not. Carrier v. Debarge’s Coll. Junction, 95-18 (La.App. 3 Cir. 9/27/95), 673 So.2d 1043, writ denied, 96-0472 (La.4/8/96), 671 So.2d 337.
However, “[w]hether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ.” City of Shreveport v. Casciola, 43,132, p. 8 (La.App. 2 Cir. 3/26/08), 980 So.2d 203, 209. The WCJ’s findings of fact are subject to the manifest error standard of review. Id.
Burkett v. LFI Fort Pierce, Inc., 10-1478, p. 6 (La.App. 3 Cir. 5/4/11), 63 So.3d 365, 370, writ denied, 11-1129 (La.9/16/11), 69 So.3d 1148 (quoting Funderburk v. Nabors Drilling USA, Inc., 05-1119, pp. 6-7 (La. App. 3 Cir. 4/26/06), 930 So.2d 1058, 1062, writ denied, 06-1252 (La.9/15/06), 936 So.2d 1275).
At the trial of this matter, Strother testified that he is twenty-five years old and is married to Crystal Strother, who worked as a manager at Wal-Mart. They are the parents of two children, ages five and thirteen, and they live in a mobile home on property owned by Crystal’s father. Strother stated that he quit school *1084 | fiduring the tenth grade in order to get a GED and begin working. According to Strother, several weeks after he was fired by the City, he began working for his friend, Isaac Rabalais, who owns a construction company, in order to supplement his family’s income. He stated that he was only able to work for about two or three weeks before he had to quit due to increasing back pain. Thereafter, he returned to Dr. McCann and received several shots and some pain medication. He also sought additional treatment from Dr. Drerup, whom he told about his boxing injury at the police academy. Dr. Drerup gave him some cream to put on his back and recommended that he do physical therapy. Strother explained that because the City would not pay for his doctor visits or physical therapy, he was not able to afford the recommended physical therapy.
Strother testified that he continues to have pressure in the middle of his low back that increases with almost all activity. He stated that he takes care of his children and the house while his wife works and that he tries to help maintain the property where his family lives. He also hunts and fishes whenever possible.
Crystal testified that she currently works the day shift at Wal-Mart from 7:00 a.m. to 4:00 p.m. Because she has to leave before the children go to school, her husband is responsible for getting them to and from the school bus. She stated that he also washed the family’s clothes and had supper ready when she returned from work. According to Crystal, her husband had not been able to work since helping his friend Isaac in his construction business, and his complaints of back pain or pressure have remained constant since he stopped working for the City. Finally, she stated that her husband wanted to get help for his back pain so that he could return work and/or school.
17Shannon Melerine, the City’s risk management adjustor, testified that after Dr. McCann discharged Strother and released him to return to work on April 4, 2011, with an indication that he had returned to his pre-accident condition, she never authorized payment of any additional benefits for Strother because she believed that any exacerbation of his pre-existing condition had dissipated. As the WCJ noted in its oral judgment, however, Strother was still experiencing pain when he was discharged from Dr. McCann, and he sought additional treatment from both Dr. McCann and Dr. Drerup, explaining to both physicians that his complaints of back pain and pressure stemmed from the boxing accident.
According to his October 17, 2012 deposition, Dr. McCann treated Strother on December 7, 2011, at which time Strother complained that his low back “continued to hurt daily” and that the pain got “worse with cold weather.” Strother further informed Dr. McCann that he would have returned to his office sooner but he had experienced difficulty with his workers’ compensation coverage. Dr. McCann gave Strother an anti-inflammatory injection and refilled his prescriptions for pain medication and muscle relaxers. In his deposition, Dr. McCann stated his belief that the cause of Strother’s current complaints was the boxing accident for which he had previously treated him. Dr. Drerup stated in his September 7, 2012 deposition that when he saw Strother in April 2012, Strother’s fusion appeared to be “solid.” Moreover, Dr. Drerup opined that Strother’s complaints of low and mid-back pressure were unrelated to the horse riding accident that necessitated his May 2010 back surgery. He prescribed an anti-inflammatory cream for Strother to apply to his back. In addition, Dr. Drerup believed that Strother should complete physical *1085 therapy before attempting to return |sto any kind of employment, which treatment, he believed, could prevent Strother’s back condition from becoming chronic and enable him to return to work.
In light of the uncontradicted testimony and medical evidence, we find no manifest error in the WCJ’s finding that, at the time of trial, Strother was unable to work as a result of the February 15, 2011 accident that he suffered during the boxing training exercise while employed by the City. Accordingly, we find no merit to the City’s assertion that the WCJ erred in awarding Strother TTDs.

Solidary Liability of the ACC

In Abshire v. Dravo, 396 So.2d 521, 524-25 (La.App. 3 Cir.1981), this court found in favor of the claimant, Abshire, after he suffered aggravation of a preexisting injury and stated as follows:
Plaintiff also was suffering a tolerable degree of pain until he was struck by the falling piece of salt and that pain then increased to an intolerable level. The proper standard for determining whether an accident is the legal cause of the disability is simply whether the accident changed the plaintiffs condition so as to render him disabled and unfit for his former employment. Allen v. Milk Haulers, Inc., 278 So.2d 871 (La.App. 1st Cir.1973). Plaintiff has met this standard.
[[Image here]]
The WCJ’s determination that Roug-eou was credible, coupled with Dr. Nan-da’s deposition testimony, meets the required preponderance of the evidence standard. Causation is not necessarily a medical conclusion, and the ultimate determination as to whether a plaintiff has proved the causation of his/her disability is made by the courts and not by medical experts. Bush v. Avoyelles Progress Action Comm., 07-685 (La.App 3 Cir. 10/31/07), 970 So.2d 63; Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982). Rougeou’s claim for the recommended surgery should have been granted by Cabrini.
Under Louisiana law, the employer takes the employee as he finds him, and it is well-settled that the aggravation of a pre-existing condition is fully compen-sable. Abshire, 396 So.2d 521.
Rougeou v. St. Francis Cabrini Hosp., 12-854, pp. 10-11 (La.App. 3 Cir. 2/6/13), 107 So.3d 851, 859.
|flThe WCJ concluded that Strother met his burden of proving that he was injured as a result of the boxing exercise that he suffered in conjunction with his training at the police academy. The WCJ further concluded that while the City claimed that Strother’s complaints were attributable to the injury that he suffered while employed by the ACC prior to his employment with the City, the City failed to produce any medical evidence to support that claim. Instead, the WCJ noted that the medical evidence uniformly supports Strother’s claim that his current “ongoing complaints are the aggravation he suffered in the training incident during the boxing incident.”
After a thorough review of the testimony and evidence, we conclude that the WCJ did not err in rendering judgment only against the City, as the boxing accident that he suffered while employed there resulted in an aggravation of his prior back condition that left him temporarily totally disabled from returning to work. The WCJ did not fail to rule on the issue of solidary liability between the City and the ACC. Instead, the WCJ determined that while Strother’s current complaints may be the result of an aggravation of his prior back condition, they were caused by his February 2011 boxing accident and *1086 were not simply the same complaints that he had following his May 2009 accident while employed by the ACC. As a result, the WCJ found that the City was solely responsible for paying the workers’ compensation benefits currently owed to Strother. The City’s second assignment of error lacks merit.
DECREE
For the foregoing reasons, the judgment of the WCJ in favor of Marcus Anthony Strother and against the City of Marks-ville Police Department is affirmed. |inAll costs of this appeal are assessed against the City of Marksville Police Department.
AFFIRMED.
CONERY, J., concurs in part and dissents in part and assigns reasons.

. According to the motion to consolidate, Strother's claim against the ACC was filed in District 2 of the Office of Workers’ Compensation and was assigned Docket Number 11-3913.

. While a signed order of consolidation appears in the record on appeal, neither the record on appeal nor the exhibits filed at the trial of this matter contain the 1008 nor any other pleadings regarding the claim Strother filed against the ACC.

. We note that the City has not specifically assigned as error the WCJ’s award of penalties and attorney fees. Instead, the City simply asserted that if this court were to reverse the WCJ's award of TTDs, we should also reverse that portion of the judgment awarding Strother "penalties and attorney fees for failing to pay disability benefits.”